**UNITED STATES of America, Appellee,**

v.

**Radamez CARRAZANA, Appellant.**

**No. 89-3213.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 2, 1995.

Decided Dec. 12, 1995.

Reita P. Pendry, Chief Assistant Federal Public Defender, with whom A.J. Kramer, Federal Public Defender, was on the briefs, argued the cause for appellant. Lisa B. Wright, Assistant Federal Public Defender, entered an appearance.

L. Jackson Thomas, II, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, and Roy W. McLeese, III, Assistant United States Attorneys, were on the brief, argued the cause for appellee. Elizabeth Trosman, Assistant United States Attorney, entered an appearance.

Before: WALD, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

■ Radamez Carrazana was convicted of various drug offenses after a jury trial in the district court in 1989. He now appeals, claiming that because the court reporter has been unable to supply transcripts of certain portions of the trial—namely proceedings before opening statements, including voir dire and preliminary instructions to the jury, and various bench conferences—in violation of the Court Reporter Act, 28 U.S.C. § 753(b), he is entitled to reversal of his conviction. Because we reject a rule of per se reversal on account of such gaps, and because Carrazana has neither alleged nor shown any real likelihood of some specific error that may have occurred during these proceedings, we affirm.

\* \* \*

An indictment filed March 9, 1989 charged Carrazana and another defendant jointly with possession with intent to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. § 841(a); Carrazana individually with two counts of distribution of crack also in violation of § 841(a); and Carrazana individually with maintaining premises for the purpose of distributing cocaine in violation of 21 U.S.C. § 856. In a first trial, in June 1989, the jury acquitted Carrazana's co-defendant and did not reach a verdict as to Carrazana. After a second trial in August 1989, the jury found Carrazana guilty of the possession count and of both distribution counts but acquitted him of maintaining premises for the purpose of distributing crack.

On August 24, 1989 Carrazana's trial counsel at the second trial filed a Motion for Judgment of Acquittal and New Trial, claiming that the evidence was insufficient on the possession count and insufficient to show two separate distributions. Carrazana also ar-

gued that submission to the jury of the possession charge and the second distribution charge had prejudiced him. The district court denied the motion and in November 1989 sentenced Carrazana to three concurrent terms of ten years' imprisonment and ordered five years of supervised release and payment of a special assessment of $50 on each count. Carrazana took this appeal on November 28, 1989. On January 22, 1990 we appointed counsel to represent Carrazana on appeal.

On February 1, 1990 Carrazana's counsel filed a First Transcript Status Report, saying that he had ordered the transcript of the sentencing on November 11 and a part of the transcript from the first trial for June 7.[1] He acknowledged receiving all other transcripts from trial counsel—presumably referring to ones already ordered. In the Ninth Transcript Status Report, filed on May 29, 1990, counsel stated he had ordered one further transcript, that of the suppression hearing on April 25, 1989, again acknowledging receipt of all other transcripts. The record does not disclose why the process was stretched over four months entailing nine reports.

Defendant then moved to stay the appeal and remand the case for further findings of fact, noting that he had filed a motion for new trial in the district court claiming ineffective assistance of counsel. On September 28, 1990, under our now-abandoned policy favoring delay of the appeal where defendant moved for a new trial, we granted the motion to stay the appeal and called for motions to govern further proceedings as soon as the district court either denied the motion for a new trial or indicated that it intended to grant the motion. See *United States v. Cyrus*, 890 F.2d 1245, 1247 (D.C.Cir.1989) (establishing practice of delaying appeal); United ed States Court of Appeals, District of Columbia Circuit, *Notice of New Practice Pre-*

*cluding Deferral of Direct Criminal Appeal Pending Post-conviction Proceedings in District Court* (Sept. 26, 1995) (dropping practice); *United States v. Lucas,* 67 F.3d 956, 958–59 (D.C.Cir.1995) (alluding to lengthy delays involved in former practice and referring to its abandonment). Three and a half years later, on May 26, 1993, the trial court denied the motion for a new trial; this court, having learned of the denial, on January 10, 1994 again directed the parties to file motions to govern further proceedings. Instead, defendant's counsel filed a motion to withdraw and appoint new counsel, which we did on March 16, 1994.

Defendant's new counsel on May 31, 1994 filed a motion to vacate the briefing schedule, noting for the first time that the transcript of the second trial was incomplete, specifically that the bench conferences held during the first two days of trial were missing. We held the appeal in abeyance while defendant tried to find the transcript. In a motion to govern further proceedings, defendant explained the results of the search: in July 1993 the reporting company had apparently sent a box of the relevant stenomask tapes to the district court. The district court, however, had no record either of receiving the box or of sending it to the Records Center in Suitland, Maryland.

At this point, this court ordered reconstruction of the record under Rule 10(c) of the Federal Rules of Appellate Procedure.[2] Reconstruction proved a failure. On April 5, 1995 the defendant filed the statement required by Rule 10(c), saying that he was not present at bench conferences and that, although he and his Spanish-speaking interpreter were present for the rest of the untranscribed portions, he couldn't recall what had happened. Nor could defendant's trial counsel remember what had happened during the bench conferences and the prelimi-

---

1. Rule 10(b)(1) of the Federal Rules of Appellate Procedure states: "Within 10 days after filing the notice of appeal the appellant shall order from the reporter a transcript of such parts of the proceedings not already on file as the appellant deems necessary...."

2. Rule 10(c) provides:

If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days after service.

nary proceedings, even after reviewing parts of the trial transcript and his trial notes. The United States made an unsuccessful independent attempt to find the missing transcripts, and advised the court that the former Assistant U.S. Attorney who had tried the case, after consulting copies of the available transcripts, remembered only that the trial had been "routine." On April 7, 1995, the district court found that because of the amount of time that had passed it was impossible to reconstruct the missing portions of the record, which were identified as "any proceedings on August 15, 1989, that took place before opening statements (including, at the least, the voir dire and preliminary instructions), [and] the bench conferences noted" on 14 specified pages of the August 15 and August 16, 1989 transcripts.

\* \* \*

■ The Court Reporter Act provides: Each session of the court and every other proceeding designated by rule or order of the court or by one of the judges *shall be recorded* verbatim by shorthand, mechanical means, electronic sound recording, or any other method.... Proceedings to be recorded under this section include (1) all proceedings in criminal cases had in open court....

.... *Upon* the *request* of any party to any proceeding which has been so recorded who has agreed to pay the fee therefor, or of a judge of the court, *the reporter* or other individual designated to produce the record *shall promptly transcribe* the original records of the requested parts of the proceedings and attach to the transcript his official certificate, and deliver the same to the party or judge making the request.

28 U.S.C. § 753(b) (emphasis added). In criminal cases the term "proceedings" includes voir dire examination of the jury and bench conferences as well as presentation of evidence, jury instructions, and arguments of counsel to the jury. *United States v. Robin-*

son, 459 F.2d 1164, 1170 (D.C.Cir.1972).[3] The purpose of the act is to "remove uncertainty and speculation and to protect the rights of litigants." *Id.* at 1171.

While recording proceedings in criminal cases is mandatory, this court has joined all other circuits that have addressed the issue in holding that the reporter's failure to record, or to make a full transcript available to the defendant, does not per se require reversal. *Robinson,* 459 F.2d at 1170–71; *United States v. Workcuff,* 422 F.2d 700, 701–02 (D.C.Cir.1970). See also, e.g., *United States v. Wilson,* 16 F.3d 1027, 1031 (9th Cir.1994); *White v. Florida Dept. of Corrections,* 939 F.2d 912, 914 (11th Cir.1991); *United States v. Colmenares–Hernandez,* 659 F.2d 39, 43 (5th Cir.1981); *Edwards v. United States,* 374 F.2d 24, 26 (10th Cir.1966). A per se rule would have several advantages: protection against even very remote possibilities of error, perhaps some increase in compliance with the Recording Act, and ease of administration. But the courts have uniformly found the drawbacks of a per se rule too great, most obviously the greater number of retrials necessitated (the retrials themselves being marred by loss of evidence), even where there was in fact no reversible error.

■ The rejection of a per se rule of course requires the court to balance in individual cases the burdens and benefits of reversing a conviction for want of a complete transcript. In doing so, courts have considered three basic factors: (1) the goal of deterring violations of the Court Reporter Act; (2) the ability (and reasonable efforts of the parties) to correct for violations of the Act by reconstructing the record; and (3) the likelihood that reversible error occurred.

In this case, two of these factors need not detain us. First, there is no indication of fault in the violation of the Court Reporter Act. *Robinson* emphasized this as an important factor weighing against reversal, expressing reluctance to reverse "in cases such

**3.** See also, e.g., *United States v. Sierra,* 981 F.2d 123, 127 (3d Cir.1992) (reporter must record sidebar conferences); *United States v. McGarrity,* 559 F.2d 1386, 1388 (5th Cir.1977) (same); *United States v. Snead,* 527 F.2d 590, 591 (4th Cir. 1975) (same); *Stirone v. United States,* 341 F.2d 253, 256 (3d Cir.1965) (reporter must record all phases of jury selection, including voir dire); *United States v. Piascik,* 559 F.2d 545, 550 (9th Cir.1977) (reporter is required to record voir dire examination of jurors).

as this where the unavailability of the transcript is not shown to have been the fault of either the court, the government, or the reporter...." 459 F.2d at 1171. There the reporter's notes had been stolen, and we distinguished the situation from that in *Workcuff,* where the court reporter was not present to record the missing portion. Here, the reporter did indeed record the missing portions, but the stenomask tapes were inadvertently lost, and it is unclear where any fault for the loss may lie. We pause to express doubt that the reporter's fault should militate in favor of requiring retrial: it is not clear why any specific reporter, or reporters generally, would regard the necessity of a retrial as a deterrent to sloppy treatment of notes, recordings or transcripts. Of course such sloppiness might lead to some exercise of the court's or judicial conference's supervisory powers, see 28 U.S.C. § 753(c), but it would seem that negligence itself would occasion such exercise, apart from retrials.

Second, although the parties have each made efforts to reconstruct the missing portions of the record, the efforts have served only to pinpoint the gaps, not to fill them. Where successful reconstruction efforts have been made, we and other courts have noted the benefit, *Robinson,* 459 F.2d at 1170-71 & n. 14, even to the point of declaring that review had not been frustrated, *id.* at 1171, though in the nature of things certainty on the point was impossible. See also *United States v. Cashwell,* 950 F.2d 699, 704 (11th Cir.1992) (refusing to reverse where record could be adequately reconstructed and reconstruction did not reveal reversible error); cf. *United States v. Ellzey,* 874 F.2d 324, 330-31 (6th Cir.1989) (refusing to reverse conviction where defendant "has not shown that he made any reasonable or unsuccessful effort to determine the substance of the unrecorded remarks").

We therefore turn to the question of the likelihood that reversible error occurred, the basic consideration behind many factors courts have discussed: the ability of the defendant to allege specific prejudice arising out of an event in the missing portions; the extent of the missing portions; the significance of the missing portions in a typical trial

(e.g., final jury instructions are presumptively more significant than a bench conference); the likely significance of the missing portions in the context of the specific trial in question; and the use of new counsel on appeal.

Many courts have emphasized the importance of the defendant's alleging some specific error in the missing portions of the record. See, e.g., *United States v. Wilson,* 16 F.3d 1027, 1031 (9th Cir.1994) (requiring a showing of "specific prejudice" to reverse conviction because of a missing transcript); *United States v. Smith,* 591 F.2d 1105, 1108-09 (5th Cir.1979) (if trial counsel and appellate counsel are same person, failure to record "will not justify a reversal without a specific showing of prejudice"); *United States v. Snead,* 527 F.2d 590, 591 (4th Cir.1975) (refusing to reverse because no prejudice shown from failure to record bench conferences); *United States v. Sigal,* 341 F.2d 837, 838 (3d Cir.1965) (same; voir dire). While failure to allege specific prejudice is indeed an important factor, this court has found reversible error even though defendant could allege no specific prejudice where the court reporter failed to record a "crucial stage" of the trial: a special instruction given to the jurors some time after they had retired to deliberate. *Workcuff,* 422 F.2d at 702.

In this case, only a relatively small portion of the transcript is missing; the vast majority of the proceedings are available to counsel. Cf. *United States v. Rosa,* 434 F.2d 964, 965 (5th Cir.1970) (reversing conviction where entire trial transcript was missing). Nor do the missing portions seem to be particularly significant. While both voir dire and preliminary instructions plainly can be occasions for reversible error, they are characteristically relatively uniform across trials, so as to make them relatively improbable sites of reversible error. And, as to preliminary instructions, any error would likely be viewed as corrected in the final instructions. While a bench conference obviously might be the occasion of a critical ruling, its omission from the record is significant only to the extent that the omission may conceal the presence of some error in what actually reached the jury—an issue we explore below in the context of this trial. See *United States v. Gallo,* 763 F.2d 1504,

1531 (6th Cir.1985) (refusing to reverse conviction because bench conferences were not recorded and no specific prejudice alleged); see also *United States v. Stefan,* 784 F.2d 1093, 1102 (11th Cir.1986) (refusing to reverse because absence of transcript from a one hour and forty-five minute bench conference was not a "significant and substantial" omission).

Here the specific context of the gaps is hardly suggestive of probable error. In the first place, defendant's trial counsel filed a motion for judgment of acquittal and new trial a few days after the trial ended; all the points he thought worthy of raising (primarily sufficiency of the evidence) were points that could be fully explored by a study of the evidence reaching the jury. Second, the context of each of the bench conferences does not indicate reversible error. As any judicial error in *admission* would be readily detectable on the available transcripts, we search especially for any hint of an erroneous *exclusion* of defense evidence or cross-examination. Of the four conferences that occurred without a witness on the stand, two occurred at the beginning of a session, Transcript ("Tr.") 8/16 at 3, 81, and one at the end of a session, Tr. 8/15 at 62 (bench conference called after court asks prosecutor to call next witness, after which court announces adjournment for the day); these three seem likely to have concerned purely housekeeping matters. The fourth occurred after the defense sought to introduce three exhibits into evidence; the prosecution requested the conference, and immediately afterward the three exhibits were admitted and the defense rested. Tr. 8/16 at 154. Of the three other unrecorded bench conferences on August 15, one evidently involved an objection by the defense that was sustained, Tr. 8/15 at 22, and another directly followed the court's sustaining its *own* objection to the prosecutor's question and directing, rather ominously, "Come up here, counsel." Tr. 8/15 at 25. The third seemed to concern the need for defense counsel to rephrase a question that was garbled and multiplicitous. Tr. 8/15 at 34.

Of the remaining bench conferences on August 16, one apparently involved a need for the prosecution to reframe a question so that it wouldn't invite a report of hearsay. Tr. 8/16 at 6. Another seemed to reflect the court's concern that a police officer witness was giving a general legal analysis of a warrant; after the conference, the prosecutor reframed the question to ask what the police officer's specific role had been in the execution of the warrant. Tr. 8/16 at 21. Another conference was evidently for the court to ask a question about a diagram the prosecution wanted to show a witness. Tr. 8/16 at 23. Yet another was for the court to observe, at defense counsel's request, photographs by the prosecution. Tr. 8/16 at 27. The court called one after defense counsel apparently began to ask the witness a question just after the prosecution finished a two-question *re*-redirect examination; the court excused witness after the conference, possibly on the ground that any further contribution by him would be marginal and redundant. Tr. 8/16 at 79. One conference seemed to involve defense counsel's desire that a police officer be recognized as an expert in "narcotics" rather than "crack," and thereafter the prosecutor used the word "narcotics." Tr. 8/16 at 92. Finally, the court called a bench conference right after defense counsel objected to the prosecutor's asking a question; immediately afterward the prosecutor ended her examination without asking another question. Tr. 8/16 at 95.

To sum up this unpromising array: the context suggests rather strongly that the issues treated at the bench conferences related primarily to housekeeping matters or to the form and scope of questions, all without a real hint of any serious restriction being imposed on the defense. Further, if the defendant had sought to call a witness and the court had in the course of a bench conference vetoed the witness's appearance, one would expect the defendant himself to remember the episode; but in the attempted reconstruction defendant suggested no such thing.

■ We do not consider the use of new counsel on appeal to be a significant factor, apart from the separate problem of trial counsel's being unavailable, through death, ill-health or whatever, to reconstruct the rec-

ord. Courts that make a change of attorney pivotal—as in requiring a specific showing of prejudice when counsel has continued but only a "significant and substantial" omission when new counsel are present, see, e.g., *United States v. Preciado–Cordobas*, 981 F.2d 1206, 1212 (11th Cir.1993); *United States v. Selva*, 559 F.2d 1303, 1305 (5th Cir.1977)—seem to disregard the ability of trial counsel, whether or not representing the defendant on appeal, to participate in reconstruction of the record under Rule 10(c). That opportunity, so long as trial counsel is available, seems largely to neutralize the effect of a shift. The issue of possible trial counsel incompetence does not support a distinction based on whether counsel has continued: if incompetent counsel continues, he seems unlikely to highlight his own deficiencies on appeal; if not, he will equally refrain from helping new counsel do so. Of course partial lack of a record will hinder new counsel's search, but that is a given in all these cases. In addition, as several courts have pointed out, a different rule for defendants with new counsel on appeal creates an incentive for defendants to obtain that advantage simply by switching counsel. See *United States v. Gallo*, 763 F.2d 1504, 1530–31 (6th Cir.1985); *United States v. Sigal*, 341 F.2d 837, 850 (3d Cir.1965) (Biggs, C.J., dissenting in part). While in *Workcuff* we stated that the problem of unavailable transcripts was "greatly exacerbated" when a defendant was represented by new counsel on appeal, 422 F.2d at 702, we did not specify why that might be the case and, in any event, rested the decision primarily on the "crucial" character of instructions to the jury, especially where the jury had been summoned back to the courtroom to hear the unrecorded charge, *id.* Accordingly, we think a change of counsel significant only to the extent that it is shown to be so, as where it involves trial counsel's unavailability for reconstruction purposes.

Finally, we note that initial appellate counsel's prompt fulfillment of his duties to order the transcript would likely have made all this unnecessary. The Federal Rules of Appellate Procedure assign the appellant the primary responsibility for ordering the transcript and ensuring its completeness for review: *"The Transcript of Proceedings; Duty of Appellant to Order; Notice to Appellee if Partial Transcript is Ordered.* Within 10 days after filing the notice of appeal the appellant shall order from the reporter a transcript of such parts of the proceedings not already on file as the appellant deems necessary...." Rule 10(b). Here, appellant's initial appellate counsel failed to notice that parts of the transcript were missing until nearly five years after trial, during which time they were lost. Cf. *Carter v. United States*, 388 F.Supp. 1334, 1335–36 (W.D.Pa.1975) (holding that defendant's rights to transcripts under 28 U.S.C. § 753(b) were not violated where he only ordered transcripts of suppression hearing and of testimony at trial but did not order transcript of prosecutor's opening statement and summation), aff'd 517 F.2d 1397 (3d Cir. 1975) (unpublished opinion).

\*     \*     \*

The judgment of the district court is therefore affirmed.

*So ordered.*