UNITED STATES of America, Appellee,

v.

Spencer L. JOHNSON, Appellant.

No. 98–3111.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 6, 2000.

Decided Nov. 14, 2000.

Lisa B. Wright, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A. J. Kramer, Federal Public Defender.

Valinda Jones, Assistant United States Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, United States Attorney, John R. Fisher and Darrell C. Valdez, Assistant United States Attorneys.

Before: EDWARDS, Chief Judge, GINSBURG and TATEL, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

A jury convicted Spencer L. Johnson of possession with intent to distribute over 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii) (1994), and simple possession of marijuana, in violation of 21 U.S.C. § 844(a) (1994). Judge Harold H. Greene sentenced Johnson to 121 months in prison and five years of supervised release on count one, and concurrent terms of 12 months in prison and one year of supervised release on count two.

Johnson appeals and requests a new trial. He asserts that the prosecutor substantially prejudiced the verdict by arguing to the jurors that their function included protecting the community from drugs. Defense counsel raised a timely objection to the prosecutor's comments at trial. Johnson is correct that the prose-cutor's comments were error. However, the error was harmless. The improper comments did not substantially or injuriously affect the determination of the jury's verdict. As a result, we affirm the judgment.

In the alternative, Johnson argues that this court should remand the case for re-sentencing. Johnson has not been provided with a transcript of his sentencing proceedings in violation of the Court Reporter Act, 28 U.S.C. § 753(b) (1994). The Miller Reporting Company lost the stenomask tape and any transcript that might have been prepared. Johnson asserts that without resentencing there can be no meaningful review. The Government argues that the likelihood of a lower sentence is small, but concedes that it is not out of the realm of possibility.

This case presents a highly unusual circumstance. Ordinarily, if a sentencing record is lost, the judge who sentenced the defendant makes definitive findings as to the content of the sentencing proceedings pursuant to Rule 10(c) of the Federal Rules of Appellate Procedure. In this case, however, the judge who sentenced Johnson became seriously ill before the record could be reconstructed. The judge who succeeded the original trial judge issued an order stating that the record could not be reconstructed. Given what is known here about the sentencing proceedings before the original trial judge, it is possible that Johnson was entitled to a lesser sentence. In light of these unusual circumstances, and to ensure that all appropriate possibilities are considered, we remand the case for resentencing.

## I. BACKGROUND

### A. Trial

On February 24, 1998, a federal grand jury indicted Johnson for possession with intent to distribute over 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii), and simple possession of marijuana, in violation of 21 U.S.C. § 844(a). Johnson's first trial end-

ed in a mistrial when certain jurors became unavailable entering the fourth day of deliberations. During Johnson's second trial, the Government presented the testimony of five police officers involved in appellant's arrest: Investigator Tommy Miller, Sergeant Curt Sloan, and Officers John Branch, Devinci Wooden, and Andre Wright. The Government also presented the testimony of a chemist and a police detective with expertise in narcotics. The defense presented the testimony of Johnson, and Johnson's friend, Larry Holmes, who witnessed the arrest.

The officers testified to the following. On February 6, 1998, they were patrolling the neighborhood surrounding Clifton Street, N.W., Washington D.C. Around 5:00 p.m., Officer Tommy Miller, sitting with his partner in a police car, noticed a broken light on Johnson's car. They radioed the other officers that they were going to make a traffic stop. *See* Trial Transcript ("Tr.") 6/17/98 at 17. When they reached Johnson, he had driven around the corner, parked his car, and started walking towards an alley. *See id.* at 18–19.

Officer Branch pursued Johnson through the alley. Officer Branch wore a black police raid jacket with "Police" written on front. He wore a badge at his waistband and a gun on his hip. Officer Branch did not identify himself, but believed Johnson realized he was a police officer. *See id.* at 83–84. In the alley, Sergeant Sloan saw Johnson use a hook-shot twice to toss objects onto the roof. *See* Tr. 6/18/98 at 57. Officers Wooden and Wright saw Johnson throw two objects onto the roof. *See id.* at 95–96; Tr. 6/19/98 at 12. Officer Branch saw one of Johnson's throws. *See* Tr. 6/17/98 at 49–50. After the police reached Johnson, Officer Miller heard Johnson say he ran because he did not have his driver's license. *See id.* at 27. Officer Branch recovered two plastic bags from the roof containing 64 grams of cocaine. *See id.* at 51. A police detective with expertise in narcotics testified that this was more than an indi-

vidual would normally possess for personal use. *See* Tr. 6/19/98 at 69. The officers also found a bag in Johnson's coat containing 26.5 grams of marijuana. *See* Tr. 6/17/98 at 62–63; Tr. 6/19/98 at 47.

Johnson's story was quite different from the testimony of the officers. He testified that on February 6, 1998, he parked near his former home on Chapin Street. *See* Tr. 6/19/98 at 105, 108–09. As he walked away from his car, a man jumped out of another car and chased him. Because his brother had been killed recently in crossfire in a drive-by shooting in the same area, Johnson feared for his life and ran instinctively. *See id.* at 106. He did not know the man chasing him was a police officer. *See id.* at 106–07. After he was stopped by the police in the alley, an officer told him the police were going to say he threw illegal drugs onto the roof. *See id.* at 118. Johnson testified that he could not have made a hook-shot motion because of an injury to his right shoulder. *See id.* at 104. He testified that he did not possess any drugs. *See id.* at 112. Larry Holmes testified that he saw Johnson run down an alley before being stopped by police. He did not see Johnson throw anything. *See id.* at 86.

### B. Prosecutor's Statement

In his rebuttal argument to the jury, the prosecutor stated:

> [Y]ou heard in his closing defense counsel make a lot about truth and justice and the Pledge of Allegiance. Well, ladies and gentlemen, justice does not have one eye; it's got two eyes. Justice protects not only the person who is accused, but it also protects persons like those individuals who—those 400–plus individuals that the crack cocaine were intended for. That is another person justice is intended to serve.

Tr. 6/22/98 at 48. Defense counsel requested curative instructions. Initially, Judge Greene did not remember the statement. After being reminded of the comment by both defense counsel and the

prosecutor, Judge Greene denied the request explaining:

I don't think that is improper. It is a little of pressure on the jury, which is probably what Mr. Jones objected to, but I don't think it is improper enough that I should now tell the jury to forget about that. That is what you want me to do, right? That is reserved for a future time, for the third and fourth and fifth time.

*Id.* at 71. The jury subsequently returned guilty verdicts on all charges.

### C. Sentencing

Judge Greene sentenced Johnson to 121 months in prison and five years of supervised release on count one, and concurrent terms of 12 months in prison and one year of supervised release on count two. Unfortunately, the official court reporter, Miller Reporting Company, lost the steno-mask tape of the sentencing proceedings, so no transcript of the proceedings could be prepared. Subsequently, Johnson, pursuant to Rule 10(c) of the Federal Rules of Appellate Procedure, served a statement of proceedings on the Government in which Johnson, his trial attorney, and his mother, attempted to reconstruct the sentencing proceedings. In response, the Government elected not to contest or supplement Johnson's statement.

Ordinarily the judge who presides at sentencing makes definitive findings regarding the content of the sentencing proceedings. Judge Greene, however, as a result of serious illness, was not available. In his absence, Chief Judge Norma Holloway Johnson entered an order finding that complete reconstruction and settlement of the sentencing record was not possible. *See United States v. Johnson,* Crim. No. 98–062, Order (D.D.C. Dec. 23, 1999) ("Order"), *reprinted in* Appellant's Appendix ("Appellant's App.") at 40.

## II. Analysis

### A. Prosecutor's Statement

■ Johnson raised a timely objection to the prosecutor's rebuttal argument to the jury; therefore, we review the contested remarks for harmless error. *See United States v. Saro,* 24 F.3d 283, 287 (D.C.Cir.1994). In any invocation of the harmless error standard, the Government carries the burden of proof; and the measure of "harm" under the standard is whether the error had substantial and injurious effect or influence in determining the jury's verdict, not merely whether the record evidence is sufficient absent the error to warrant a verdict of guilt. *See United States v. Smart,* 98 F.3d 1379, 1390 (D.C.Cir.1996).

■ In assessing claims of prosecutorial misstatements, the court is required to determine whether the disputed remarks constituted error and whether they substantially prejudiced the defendant's trial. *See United States v. Childress,* 58 F.3d 693, 715 (D.C.Cir.1995). We typically consider several factors in this analysis: the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error. *See Gaither v. United States,* 413 F.2d 1061, 1079 (D.C.Cir.1969).

■ There is no doubt here that the prosecutor's rebuttal argument to the jury was impermissible. A prosecutor may not make comments designed to inflame the passions or prejudices of the jury. *See Childress,* 58 F.3d at 715. And a prosecutor may not ask jurors to find a defendant guilty as a means of promoting community values, maintaining order, or discouraging future crime. *See United States v. Monaghan,* 741 F.2d 1434, 1441 (D.C.Cir.1984). On its face, the prosecutor's argument in this case improperly suggested that the jury should convict the defendant in order to protect others from drugs.

■ The Government argues that the prosecutor's comments were a moderate response to defense counsel's allegations that the police employed Nazi tactics to frame the defendant. *See* Appellee's Br.

at 15–16. It is undoubtedly correct that, in assessing the severity of impermissible arguments, a court must consider whether prosecutorial comments were offered in response to inflammatory statements by defense counsel. *See United States v. Burnett,* 890 F.2d 1233, 1241–42 (1989). In this case, defense counsel did indeed invoke Nazi practices in discussing police tactics. *See* Tr. 6/22/98 at 42. However, read in context, the prosecutor was not responding directly to allegations of police misconduct. Rather, the prosecutor was responding to defense counsel's legitimate statement that the promise of liberty and justice for all in the Pledge of Allegiance applies to Johnson. *See id.* at 28.

The Government further argues that the prosecutor implied that the police, not the jury, had a duty to protect the community from drugs. *See* Appellee's Br. at 16. Despite this claim, the prosecutor's comments give no explicit indication that their subject is the police. The plain meaning of the prosecutor's comments is that the jury should give justice not only to Johnson, but also to the individuals the drugs were intended to reach. *See id.* at 48.

■ There is no claim here that precise measures were taken to cure the prosecutor's misconduct. However, the absence of curative instructions is not dispositive of the question of prejudice. *See Monaghan,* 741 F.2d at 1443 n. 43. Rather, an appellate court generally defers to the District Court's judgment as to "[w]hether the prosecutor has struck a foul blow instead of just a hard one." *United States v. Dean,* 55 F.3d 640, 665 (D.C.Cir.1995). We also consider the jurors' common sense in assessing the effect of a prosecutor's statement. *See Monaghan,* 741 F.2d at 1440. In the judgment of Judge Greene, the prosecutor's comments would have merited judicial intervention had they been repeated a "third and fourth and fifth time." Tr. 6/22/98 at 71. Although he did not issue a curative instruction, Judge Greene urged the jurors in his general instructions to convict

based only on the evidence and reminded the jury that the lawyers' arguments were not evidence. *See id.* at 53–54.

The final thing that we must consider in assessing a claim of prosecutorial misstatement is the likely impact of the improper remarks on the verdict. *See United States v. Williams–Davis,* 90 F.3d 490, 507 (D.C.Cir.1996). Johnson argues that his conviction was uncertain. He points out that the first trial ended in a mistrial after three and one-half days of jury deliberations. *See* Appellant's Br. at 16–17. Though complete certainty is not to be had in this circumstance, we do not think it plausible, in light of the formidable evidence arrayed against Johnson, that the prosecutor's remarks are what account for Johnson's relatively speedy conviction at the second trial.

■ Johnson also argues that the Government's evidence was infected with the aura of collusion. In support of this claim, Johnson points out that two police officers, along with the prosecutor, admitted they revisited the crime scene during the trial. *See* Tr. 6/18/99 at 61, 71. Furthermore, Johnson alleges that a photograph the officers used to illustrate their testimony contained markings that enabled them to coordinate their testimony. *See* 6/22/98 at 35. Finally, Johnson argues that the odd consistency of the testimony among the officers, such as repetition of the term "hook-shot" and references to eye contact with Johnson, indicates collusion. *See* Tr. 6/17/98 at 16, 84; Tr. 6/18/98 at 16–17, 92, 125; Tr. 6/19/98 at 9–10, 37; Tr. 6/22/98 at 37.

Despite Johnson's assertions, we find that the great weight of the evidence strongly supports Johnson's conviction. Five police officers testified that Johnson possessed drugs. Their eyewitness accounts were corroborated by physical evidence. The only challenge to their testimony came from the defendant and the defendant's friend. Furthermore, at issue in Johnson's collusion argument is the

credibility of the Government's witnesses versus the credibility of Johnson and his witness. If the prosecutor improperly addressed the issue of witness credibility, Johnson's argument might have more force. Instead, the prosecutor urged the jury to convict Johnson in order to protect the community from drugs. Given the content of the prosecutor's misstatement, it was not likely to have affected the outcome of the case. Regardless of the prosecutor's statement, the evidence clearly supported the jury's verdict. Having considered these factors, we hold that, although the prosecutor's comments were impermissible, the error was harmless. Accordingly, the jury's verdict must stand.

### B. Loss of Sentencing Record

 The Court Reporter Act, 28 U.S.C. § 753(b), requires that court reporters record verbatim all proceedings in criminal cases held in open court. However, failure to record a proceeding or make a whole transcript available does not *per se* require reversal. *See United States v. Carrazana*, 70 F.3d 1339, 1342 (D.C.Cir. 1995). We evaluate the burdens and benefits of remand on a case-by-case basis and consider "(1) the goal of deterring violations of the Court Reporter Act; (2) the ability (and reasonable efforts of the parties) to correct for violations of the Act by reconstructing the record; and (3) the likelihood that reversible error occurred." *Id.*

 In this case, Miller Reporting Company defaulted on its responsibilities by losing the transcript. There is no mitigating evidence that the transcript was lost as a result of inadvertent mechanical error. *See, e.g., United States v. Winstead*, 74 F.3d 1313, 1321 (D.C.Cir.1996). Appellant asserts that Miller Reporting Company has engaged in a pattern of negligence. The Assistant Federal Public Defender in this case attests that this is the fifth case she has handled in six years in which the Miller Reporting Company has lost a transcript. *See* Appellant's Br. at 21. The Government admits that it has

"been frustrated from time to time by lapses in the performance of this reporting company." Appellee's Br. at 25 n.15. In light of this record, our interest in deterring violations of the Court Reporter Act weighs heavily in favor of remanding this case for resentencing.

An additional consideration here is the confluence of circumstances which prevented the parties from reconstructing the record. Appellant made a good faith effort to reconstruct the record pursuant to Rule 10(c) of the Federal Rules of Appellate Procedure. However, due to the unavailability of the transcript, the inability of the parties to recall everything that occurred at sentencing, and the illness of the presiding District Court Judge, Chief Judge Norma Holloway Johnson determined that complete reconstruction of the sentencing record was not possible. *See* Order, *reprinted in* Appellant's App. at 40. As a result, there is no reconstructed record in this case.

 Finally, we must consider whether Johnson was prejudiced by the violation of the Court Reporter Act. In particular, we must consider

the ability of the defendant to allege specific prejudice arising out of an event in the missing portions [of the transcript]; the extent of the missing portions; the significance of the missing portions in a typical trial (e.g., final jury instructions are presumptively more significant than a bench conference); the likely significance of the missing portions in the context of the specific trial in question; and the use of new counsel on appeal.

*Carrazana*, 70 F.3d at 1343. In this context, since the burden of resentencing is comparatively light, these factors need not weigh as heavily in favor of remand as when a new trial is at stake. *See Saro*, 24 F.3d at 288. We thus consider the *Carrazana* factors in light of this lower burden.

First, appellant does not allege specific prejudice arising out of an event in the

sentencing proceedings. This is not dispositive, however. We have found reversible error where a crucial stage of trial was missing even though the defendant could not allege specific prejudice. *See United States v. Workcuff,* 422 F.2d 700, 702 (1970) (per curiam).

Second, in this case, the extent of the missing transcript of the sentencing proceedings is significant, as the *entire transcript* was lost. In both *Carrazana* and *Winstead,* we concluded that the context of the missing transcripts, such as the absence of select bench conferences, suggested that the missing portions related mainly to housekeeping matters. In other words, the subject matter of the missing transcripts in those cases was not crucial; as a result, it was held that reversible errors were unlikely. *See Carrazana,* 70 F.3d at 1344; *Winstead,* 74 F.3d at 1322. In contrast, in *Workcuff,* the court reporter was absent from a crucial stage of the trial—a jury instruction given after jury deliberations had begun—and, as a result, the court could not determine that no substantial right of the appellant had been violated. *See Workcuff,* 422 F.2d at 702. Similarly, in this case, although Johnson cannot point to prejudice arising out of a particular event, the loss of the transcript of the entire sentencing proceedings constitutes the absence of a crucial stage and itself increases the likelihood of error. The Government does not dispute the significance of this phase of the analysis.

Third, in evaluating the significance of the missing portions of the transcript in the context of the specific trial in question, the court considers whether the gaps are suggestive of probable error. *See Carrazana,* 70 F.3d at 1343. The Government argues that the gap is not suggestive of probable error, because we can determine that Judge Greene properly calculated Johnson's sentence based on the Presentence Investigation Report ("PSR"). The parties agree that the statutory mandatory minimum for the crime was 120 months. *See* 21 U.S.C. § 841(b)(1)(A)(iii). The Pre-

sentence Investigation Report recommended a base offense level of 32, which triggers an imprisonment range of 121–151 months. *See* PSR at 4. In addition, the Presentence Investigation Report recommended a 2–level enhancement for obstruction of justice, for a total of 34 points, which triggers an imprisonment range of 151–188 months. *See* PSR at 4–5. Judge Greene sentenced Johnson to 121 months. By implication, the Government asserts, Judge Greene rejected the obstruction of justice recommendation, but accepted the remainder of the Presentence Investigation Report. The Government further argues that Johnson did not raise any grounds for downward departure in his objections to the Presentence Investigation Report. *See* Appellee's Br. at 30–31. Nevertheless, the Government concedes that if there were grounds for downward departure, Judge Greene could have sentenced appellant to 120 months, the statutory mandatory minimum, rather than 121 months, the minimum guidelines recommendation. The Government argues this one-month discrepancy is not an appreciable difference. *See id.*

Johnson argues that, contrary to the Government's claims, the Presentence Investigation Report does not demonstrate that there was no error in the District Court's sentencing. Johnson presents the following example. The Presentence Investigation Report made it clear that Johnson met the first four criteria for the 2–level safety valve adjustment in U.S. Sentencing Guidelines Manual § 5C1.2 (1997), specifically, no criminal history points, no violence or weapon possession in the offense, no death or serious bodily injury, and no leadership role. However, only the District Court Judge could determine whether Johnson met the fifth criteria, *i.e.,* truthfully providing all information and evidence about the offense. *See* U.S.S.G. § 5C1.2.

If Judge Greene found that Johnson met the fifth criteria, and he also rejected the enhancement for obstruction of justice as

the Government suggests, Judge Greene could have sentenced Johnson to less than 120 months. *See* U.S.S.G. § 2D1.1(b)(6). The Presentence Investigation Report provides no assessment of this, and without a sentencing transcript, there is no record of Judge Greene's analysis of this provision. *See* Appellant's Reply Br. at 9. In addition, according to the uncontested account that Johnson submitted in his attempt to reconstruct the record, during sentencing Judge Greene spoke about how harsh the sentencing guidelines were, and stated that if he could sentence Johnson below the guidelines range, he would. *See* Appellant's Statement of Proceedings Prepared Pursuant to FED. R.APP. P. 10(c), *reprinted in* Appellant's App. 33–35. This further supports the possibility that Judge Greene would have granted Johnson a lesser sentence, had the safety valve been brought to his attention.

This court has not specifically ruled on whether a defendant who testified at trial and was disbelieved by the jury, but subsequently truthfully provided the Government with all information and evidence, is eligible for the safety valve. *See United States v. Schreiber,* 191 F.3d 103, 106 (2d Cir.1999) (holding that despite previous fabrications and obstruction defendant was eligible for safety valve). Under the plain language of U.S.S.G. § 5C1.2, a defendant has until "not later than the time of the sentencing hearing" to truthfully provide the Government with all information and evidence concerning the offense. Johnson bore the burden of persuading the District Court that he was eligible for the safety valve. *See United States v. Mathis,* 216 F.3d 18, 29 (D.C.Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 414, —— L.Ed.2d —— (2000). We are not in a position to weigh these factors and we cannot be certain what the trial judge's assessment might have been in this case.

Finally, in this case original counsel was available in the attempted reconstruction. As a result, the use of new counsel is not a significant factor in the likelihood of re-

versible error. *See Carrazana,* 70 F.3d at 1344–45.

As we discussed in *Carrazana,* we consider the foregoing factors in assessing the likelihood that reversible error occurred. We then weigh the likelihood that reversible error occurred, along with deterrence and the ability and efforts of the parties to reconstruct the record. *See Carrazana,* 70 F.3d at 1342–43. On balance, we find that this case presents a circumstance which qualifies for remand and resentencing. Johnson and the Government both acknowledge repeated loss of transcripts by Miller Reporting Company. Despite Johnson's good faith effort to reconstruct the record, the District Court found that no reconstruction was possible. Both parties recognize that it is possible that Judge Greene could have sentenced Johnson to a lesser sentence. In addition, the loss of the *entire* transcript of the sentencing proceedings further supports resentencing. Based on these concerns, justice requires that the case be remanded for resentencing.

### IV. CONCLUSION

For the reasons given above, we affirm the judgment, but remand the case for resentencing.