Oscar ROMERO, Appellant

v.

UNITED STATES, Appellee.

No. 03–CM–886.

District of Columbia Court of Appeals.

Argued April 20, 2007.

Decided Sept. 11, 2008.

Kenneth H. Rosenau, Washington, appointed by the court, for appellant.

Daria J. Zane, Assistant United States Attorney, for appellee. Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and Roy W. McLeese, III, John P. Gidez, Laura R. Bach, and Lisa H. Schertler, Assistant United States Attorneys, were on the brief for appellee.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and TERRY, Senior Judge.

TERRY, Senior Judge:

After a non-jury trial, appellant Romero was convicted of one count of misdemeanor sexual abuse and one count of lewd, indecent, or obscene acts.[1] A few months after appellant noted this appeal from the judgment of conviction, his counsel filed in this court a motion to stay the briefing schedule and remand the record to the trial court "for reconstruction of the proceedings." The motion stated that the existing record was insufficient to permit meaningful appellate review because some parts of the trial transcript were missing. This court stayed the appeal on September 28, 2004, so that efforts could be made pursuant to D.C. Ct.App. R. 10(c) to reconstruct those portions of the trial proceedings that had not been recorded because of a malfunction of the recording equipment in the courtroom.

At a hearing several months later, the trial judge took testimony from the trial prosecutor, heard argument from both parties, and read into the record his own notes which he had taken during trial.[2] Upon completion of these Rule 10 proceedings, this court vacated the stay, and the appeal proceeded to briefing and oral argument. Appellant's only contention on appeal continues to be that the record is insufficient to permit meaningful appellate review. We disagree and therefore affirm the judgment.[3]

1. He was acquitted by the court of two additional counts of misdemeanor sexual abuse.

2. Appellant's trial counsel was not called as a witness at the hearing and professed only a vague recollection of the events at trial. However, as indicated by her statements to the judge and her cross-examination of the prosecutor, she did not significantly disagree with the description of those events given by the prosecutor and the trial judge.

3. During the Rule 10 proceedings, appellant filed in the trial court a motion to vacate his conviction based on the insufficiency of the record, which the trial judge orally denied at the conclusion of the hearing. On February 8, 2005, this court issued an order acknowledging the filing of appellant's motion and advising him that in order to obtain appellate review of its denial, appellant would have to file an additional notice of appeal from the order denying the motion to vacate. It appears that he did not do so, since we have no record of any notice of appeal from that order. The trial court's denial of the motion to vacate is thus not before us.

I

A. *The Trial*

In its case in chief, the government presented only the testimony of the complaining witness, a sixteen-year-old girl whom we shall call Elena (not her real name),[4] and that of Michaela Kelaghan, an employee of the Latin American Youth Center, who had been assigned to work with Elena. In the only portion of Elena's direct testimony that was transcribed, she made a few introductory statements indicating that she had been living with her uncle (appellant), her aunt (Claudia Romero), and her young cousin in September 2002, because of a "problem" at home with her own mother. On cross-examination, in the only portion of her testimony that was transcribed, she agreed that appellant and her aunt had opened up their home to her, and that they were generally supportive of her.

Ms. Kelaghan testified that her work with Elena was mainly focused on completing her enrollment in school. However, during their meeting on September 27, 2002, Elena became agitated and told Ms. Kelaghan about two incidents involving appellant that had recently occurred. First, Elena reported that several days earlier, on or about September 15, while she was looking out the kitchen window, appellant had hugged her from behind, grabbed her breast, and "pushed his genitalia into her back." Second, she said that about a week later, approximately September 22, while she was asleep on the couch in the living room, appellant had come into the room, "lifted the covers, lifted her nightdress, and fondled her genitalia," and then dropped the towel that he was wearing and exposed himself to her. Elena was "visibly shaken" after recounting these events. Ms. Kelaghan explained to Elena that she would have to call the police to report these incidents, even though Elena never asked her to report them. Ms. Kelaghan was cross-examined, but her testimony was not significantly impeached.

The defense called Claudia Romero (appellant's wife), Rosa Hernandez, a "good friend" of Elena, and Pilar Romero (Elena's mother and appellant's sister). The record contains none of the direct examination of Claudia Romero, but it does contain a verbatim transcript of her cross-examination, redirect, and recross. On cross-examination, Mrs. Romero said that the day before Elena had spoken with "the social worker" (presumably Ms. Kelaghan), Elena had told her about the September 22 incident with appellant. Mrs. Romero testified that she had told Elena that she did not believe her and stated that she had never seen appellant do any of the acts described. She admitted, however, that on that date appellant had left the bedroom at about 11:00 p.m. to get a glass of water, and that he would have had to pass through the living room, where Elena was sleeping, in order to get to the kitchen. As for the incident on September 15, Mrs. Romero was certain that she and appellant and their daughter were shopping at a mall all day on that date, but she conceded that she had not kept any receipts from her purchases. The complete testimony of the other two defense witnesses was transcribed and is included in the record, but neither witness testified specifically about the two incidents in question.

In rebuttal, the government called a police investigator, Maria Flores, whose testimony was also transcribed in its entirety. Ms. Flores testified that when she interviewed appellant about the September 22 incident, he said that he had slapped Elena on the butt while she was lying on the

4. Elena's last name is not Romero.

couch because she was "sleeping with her legs opened," and that he had been wearing underwear under the towel that was wrapped around his waist. Ms. Flores also stated that when she interviewed Elena's mother, the mother told Ms. Flores that she had no reason to disbelieve what Elena was saying.

At the conclusion of the trial, the court made oral findings in which it found Elena "to be a credible witness." The court questioned the credibility of Rosa Hernandez, finding her generally "confused" about the dates of certain events, and specifically discredited Claudia Romero's testimony about what had happened on September 15. The court then found appellant guilty of two of the four acts charged: the touching of the breast on September 15, and the exposure of genitalia on September 22.

### B. *Reconstruction of the Record*

During the Rule 10 hearing, the trial judge stated that he had taken detailed notes on Elena's testimony from beginning to end, and that he had a fairly good memory of the case. The judge then read into the record his own notes of Elena's testimony, which essentially mirrored the description of events that was included in Ms. Kelaghan's testimony.

The trial prosecutor was called as a witness. During her direct examination, she testified that defense counsel had made two specific objections, one about the amendment of the date on the charging information, and the other a *Battle*[5] objection to Elena's testimony, which were both overruled. She recalled that she herself had made a few evidentiary objections to

the cross-examination of Elena, but that those objections were overruled as well. Appellant's trial counsel then cross-examined the prosecutor, and they agreed that there had been three areas of cross-examination of Elena to which she (the prosecutor) had objected, but that the court had overruled her objections. Those areas dealt with Elena's relationship with her mother, her relationship with a married man, and some issue about permanent residency.

The court made a finding that it had allowed broad cross-examination of Elena, especially on the issue of bias, and that the verdicts it had rendered at the end of the trial reflected its detailed findings about the evidence. The court then denied appellant's motion to vacate (see note 3, *supra*) and continued the hearing for several weeks to resolve any outstanding issues about the transcript.[6]

When the hearing resumed after the continuance, only counsel for the government appeared. Appellant's trial counsel had moved to withdraw from the case, and new counsel had only recently been appointed. The court said that unless it heard otherwise from appellant's new counsel, it would re-certify the case back to this court in light of its findings at the prior hearing. At no point did any party mention that the direct testimony of Claudia Romero was missing from the record or attempt to re-create it in any way.

### II

■ When the sole issue before this court is the accuracy or completeness of

---

5. *Battle v. United States*, 630 A.2d 211 (D.C. 1993), discusses the "report of rape" exception to the hearsay rule.

6. It came to the court's attention that one of the transcripts had been mislabeled, and therefore that there was actually a complete

transcript of the second day of the three-day trial, which had not yet been ordered by either party. That transcript was later prepared and is now before us as part of the record on appeal.

the trial transcript, we conduct an independent review of the record to assess its adequacy. As we said in *Cole v. United States*, 478 A.2d 277 (D.C.1984), we must "examine the supplemented record to determine whether it is adequate to permit appellant a meaningful opportunity to locate and challenge errors at trial, and to permit this court 'to exclude the possibility of any error other than harmless error.'" *Id.* at 285 (quoting *United States v. Upshaw*, 448 F.2d 1218, 1224 (5th Cir.1971), *cert. denied*, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972)). The appellant in any case bears the burden of presenting us with a record sufficient to show affirmatively that error occurred at trial. *Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982) (citing cases); *accord, e.g., Outlaw v. United States*, 854 A.2d 169, 173 (D.C.2004). Thus, if the trial transcript is incomplete and the appellant does not make any reasonable efforts to fill the gap, as by preparing a statement of proceedings, he forfeits any claim of prejudice resulting from the total or partial absence of a transcript. *Cole*, 478 A.2d at 283–284. Nevertheless, it is the ultimate responsibility of the trial court to ensure an adequate record for review. Therefore, the trial court may supplement the appellant's statement with its own recollection or trial notes, or by consultation with counsel, or by holding a hearing on the matter. *Id.* at 284–285.

■ In this case, appellant is claiming that the record is insufficient to permit meaningful appellate review, even after the Rule 10 proceedings which were specifically designed to reconstruct the missing portions of the record. He focuses mainly on his "constitutional right" to a transcript of the trial, relying on *Mayer v. City of Chicago*, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971). That case, however, does not speak in such absolute terms. On the contrary, the Court in *Mayer* stated: "A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript.... [A] State 'may find other means [than providing stenographic transcripts for] affording adequate and effective appellate review....'" *Id.* at 194, 92 S.Ct. 410 (quoting *Griffin v. Illinois*, 351 U.S. 12, 20, 76 S.Ct. 585, 100 L.Ed. 891 (1956)). We have set forth in the *Cole* case the standards by which we determine whether the reconstructed record is adequate, and we have made clear in *Lucas v. United States*, 476 A.2d 1140 (D.C.1984), that reversal may be required only when the absence of specified portions of the transcript results in prejudice to the appellant. *See id.* at 1142–1143. "[A] general claim of prejudice because of an incomplete record for which neither party is responsible" is not by itself a ground for reversal. *Watwood v. Hall*, 349 A.2d 478, 479 (D.C.1975).

■ Prejudice can generally be shown in one of two ways. First, the appellant may assert a specific claim of error which is impossible to evaluate from the existing record, so that this court cannot determine from the record whether the error was truly prejudicial. In that situation we may well find prejudice arising from the absence of all or part of the record—but that is not what we have in the instant case. Second, the appellant, although claiming "no specific error," may contend that "the omission in the transcript prevents new appellate counsel from reviewing a substantial or crucial portion of the trial proceedings to determine whether error occurred." *Lucas*, 476 A.2d at 1142. Because appellant has not alleged any specific errors that occurred at trial, his conviction may be reversed only upon a showing of this second form of prejudice.

## III

As an initial matter, we note that appellant filed what purported to be a Rule 10(d) statement[7] with this court on January 7, 2005, apparently at about the same time that he filed it in the trial court. The statement merely asserted that defense counsel did not take notes during the trial, nor did she have any independent recollection of the trial proceedings. Appellant did not prepare or file anything with this court after the hearing to reconstruct the record.

Rule 10(c) states:

If the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement must be served upon all other parties, who may serve objections or proposed amendments within ten days after being served. The statement and any objections or proposed amendments must then be submitted to the trial judge for settlement and approval. As settled and approved, the statement must be included by the Clerk of the Superior Court in the record on appeal.

Rule 10(c) does not require the trial court to hold any kind of a hearing. However, as we have stated, because it is the ultimate responsibility of the trial court to ensure an adequate record for review, that court may conclude that a hearing is the most appropriate method of clarifying or re-creating the record. *See Cole*, 478 A.2d at 285. At the conclusion of such a hearing, the burden still remains upon the appellant, under *Cobb* and similar cases, to present this court with a record sufficient to show that error occurred—either by providing us with a settled and approved statement summarizing the proceedings and the court's findings or by making sure that all relevant transcripts and other materials, such as relevant pleadings or exhibits, are transmitted to this court.

Turning to the merits of appellant's argument, we note again that the only portions of the trial transcript that are missing are the major part of the testimony of the complaining witness, Elena, and the direct examination of appellant's wife, Claudia Romero. Elena's testimony was the subject of the remand hearing, but there has been no effort by either of the parties to reconstruct the missing portion of Claudia Romero's testimony. Under *Cole*, several factors must be considered to determine whether there is sufficient prejudice to warrant reversal: (1) the portion of the verbatim transcript that is missing; (2) the extent to which the record was able to be reconstructed; (3) whether appellant is able to claim specific error that allegedly

---

7. D.C. Ct.App. R. 10(d) states:
   In place of the record on appeal as defined in Rule 10(a), the parties may prepare, sign, and submit to the trial judge a statement of the case showing how the issues presented by the appeal arose and were decided in the Superior Court. The statement must set forth only those facts averred and proved or sought to be proved that are essential to the court's resolution of the issues. If the statement is accurate, it—together with any additions that the trial judge may consider necessary to a full presentation of the issues on appeal—must be approved by the trial judge and must then be certified to this court as the record on appeal. A copy of the agreed statement may be filed in place of the appendix required by Rule 30.

   Because Rule 10(d) contemplates a statement that will completely substitute for the *entire record* from the trial court, this rule is not applicable in the circumstances of the present case. Indeed, this court explicitly remanded the case for proceedings under Rule 10(c), *not* Rule 10(d). Rule 10(c), which we shall examine in a moment, applies in instances when the proceedings are not recorded or the transcript is otherwise unavailable.

occurred within the missing portion of the transcript; (4) whether appellant or his counsel was able to assist in preparing the substitute statements; and (5) whether appellate counsel differs from trial counsel. 478 A.2d at 286–287.

Appellant first argues that a Rule 10 statement can be used to substitute for any missing transcripts only if the missing portions were not "crucial," citing *United States v. Johnson*, 343 U.S.App. D.C. 409, 231 F.3d 43 (2000). This argument is refuted not only by Rule 10(c) itself, which authorizes reconstruction "from the best available means" without regard for whether a particular transcript is "crucial," but also by the reasoning in both *Johnson* and *Cole*. In *Johnson* a missing transcript of the sentencing proceedings was considered crucial, and there was also a finding by the trial court that reconstruction of the record was "not possible" because the parties were unable to recall what had happened, and because the sentencing judge himself was unavailable on account of illness. *Id.* at 413, 231 F.3d at 47. Thus, because the missing portion was crucial *and* because reconstruction was impossible, the court remanded the case for resentencing. In *Cole*, although the reconstructed record was ultimately deemed inadequate, there was no suggestion that simply because the missing portion was "crucial," Rule 10(c) procedures could not be used to cure the deficiencies in the transcript. The court made clear that even though there are significant concerns when a "crucial" portion of the transcript is missing, courts have consistently "refused to adopt a rule that renders every failure to provide a complete transcript on appeal *per se* reversible error." *Cole*, 478 A.2d at 282. Thus the obligation of this court is to review the record as supplemented, and then to determine whether "substantial rights of the appellant have been adversely affected by the omissions

from the transcript." *Id.* (quoting *United States v. Selva*, 559 F.2d 1303, 1306 (5th Cir.1977)).

Second, appellant challenges the accuracy of the trial judge's recollections, arguing that they "are not dispositive," but without offering his own version of the missing trial testimony. To the extent that appellant has failed to offer his own recollection of the testimony, he has declined to participate in the Rule 10 process, and thus his claim of prejudice is waived. *See Cole*, 478 A.2d at 284–285. To the extent that he is simply arguing that the trial judge should have credited the limited recollections that his trial counsel put forth at the Rule 10 hearing, the argument is meritless. Our cases have made clear that the trial court has the ultimate responsibility for the accuracy of the record; thus, if the trial court is not satisfied with the accuracy of the version of events proposed by appellant, "the court should take appropriate measures to modify it." *Mayers v. Mayers*, 908 A.2d 1182, 1189 (D.C.2006) (quoting *Cole*, 478 A.2d at 284).

■ Third, appellant argues as a general proposition that the record is insufficient for meaningful appellate review. Our review of the existing transcripts and the reconstructed record in light of the *Cole* factors, however, fails to reveal any prejudice that would warrant reversal. Although the missing portions of the transcript are admittedly quite significant, the parties and the trial judge were able to reconstruct the missing testimony in substantial detail by relying on the judge's notes and the independent recollections of both the prosecutor and appellant's trial counsel. As we have mentioned, appellant has identified no specific errors, and although appellant himself apparently did not participate in the reconstruction hear-

ing, there is nothing before us to suggest that he was precluded from doing so in any way. Finally, although appellant's current appellate counsel is different from trial counsel, his original trial counsel participated in the reconstruction hearing; thus the concern raised in *Cole* on that point is not present here.

The only portion of the record that is currently missing in its entirety, in that there was no attempt to re-create it during the Rule 10 proceedings, is the direct testimony of appellant's wife, Claudia Romero. We see no need to remand this case again for further proceedings to reconstruct her testimony, given the trial judge's statement during his factual findings at the conclusion of the trial that he did not credit Mrs. Romero's alibi testimony at all.[8] Since credibility findings are almost never disturbed on appeal, *see, e.g., Vest v. United States,* 905 A.2d 263, 268 (D.C. 2006), the absence of this testimony from the record does not cause us any real concern. In addition, because of the passage of time since the trial took place, "the interests of justice would [not] be served by attempting a second reconstruction of the events of trial." *Cole,* 478 A.2d at 285 n. 10.

Because appellant has not raised any specific claims of trial error, and because we conclude that the reconstructed record is sufficient to permit meaningful appellate review, we need not look any further into the merits of the appeal. *See Lucas,* 476 A.2d at 1141 n. 1 (when appellant relies "on the flat proposition that reversal is required as a result of the loss of portions of the trial transcript ... [this court's]

review is accordingly limited"). The judgment of conviction is therefore

*Affirmed.*

---

8. The relevant finding was as follows:
   I don't think except for the September 15th date that there is any contradictory testimony, and I simply do not credit Mrs. Romero about that testimony. I've heard no evidence that gives me any reason to believe that she would be able to remember those events, and it seems to me to be events that are just so generalized as to have no weight.