*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 20-CO-554 & 20-CO-608

GREGORY D. SHARPS AND LANDRELL L. JORDAN, JR.,
APPELLANTS,

v.

UNITED STATES,
APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CF3-12783-19 & CF1-4480-20)

(Hon. Neal E. Kravitz, motion judge in No. 20-CO-554;
Hon. Ronna L. Beck, motion judge in No. 20-CO-608)

(Argued December 15, 2020                    Decided March 11, 2021)

*Carrie Weletz* for appellant Sharps.

*Mikel-Meredith Weidman*, Public Defender Service, with whom *Samia Fam* and *Jaclyn Frankfurt*, Public Defender Service, were on the briefs, for appellant Jordan and for Public Defender Service, *amicus curiae*, in support of appellant Sharps.

*Mark Hobel*, Assistant United States Attorney, with whom *Michael R. Sherwin*, Acting United States Attorney, and *Elizabeth Trosman*, *Elizabeth H. Danello*, *Felice Roggen*, *John P. Mannarino*, *Amy Zubrensky*, and *Kathleen Kern*, Assistant United States Attorneys, were on the briefs, for appellee.

Before GLICKMAN and BECKWITH *Associate Judges*, and NEBEKER *Senior Judge*.

Opinion for the court by *Associate Judge* GLICKMAN.

Dissenting opinion by *Associate Judge* BECKWITH at page 41.

GLICKMAN, *Associate Judge*:  Gregory Sharps and Landrell Jordan appeal orders in their separate criminal cases denying their motions for release from pretrial detention.  We consolidated the appeals because they present identical legal challenges to the emergency authority exercised by the Chief Judge of the Superior Court under D.C. Code § 11-947 (2020 Supp.) to extend the duration of permissible pretrial detention in response to the disruption of normal court operations by the COVID-19 pandemic.

Appellants were detained pending trial in accordance with the requirements of D.C. Code § 23-1322 (2020 Supp.).  That statute authorizes pretrial detention only for a limited time period—presumptively up to 100 days, though the court may extend that period of detention for good cause shown.  A detainee not brought to trial within the maximum period of detention is entitled to be released pending trial.[1] Appellants both have been held for longer than 100 days without trial.  Despite that, they, and other similarly situated defendants, continue to be held while they await their trials.  They remain detained past the 100-day mark due to deadline-tolling

---

[1] *See* D.C. Code §§ 23-1322(h), -1321(a).

orders issued under the authority granted by § 11-947 when an emergency requires the Superior Court to be closed or otherwise renders compliance with legal deadlines "impracticable."[2] Section 11-947 specifies that the scope of this emergency authority to toll legal deadlines "extends to all laws and rules affecting criminal . . . proceedings," including laws affecting "pretrial" procedures.[3]

Appellants seek relief from this court on either statutory or constitutional grounds. They argue that the emergency deadline-tolling authority granted by § 11-947 is inapplicable to their pretrial detention; this is a question of statutory construction. Alternatively, appellants argue that if we construe § 11-947 as authorizing the emergency prolongation of pretrial detention, then the statute unconstitutionally denies them substantive and procedural due process, on its face, or as applied. The United States disagrees with each of the foregoing contentions.

We reject appellants' arguments and affirm the denials of their motions for release.

---

[2] D.C. Code § 11-947(a)(1).

[3] *Id.* § 11-947(a)(2)(B).

**I.**

The COVID-19 pandemic has severely disrupted the Superior Court's normal operations since March 2020, when Mayor Bowser first declared a public health emergency.[4]  That emergency remains in effect at the time of this writing.  The highly contagious nature of the novel coronavirus that causes COVID-19 has forced the suspension of in-person jury trials in courts across the country, as well as in the District,[5] due to the risk of transmission that accompanies these proceedings.[6]

In 2011, the District of Columbia Courts foresaw the need for express legal authority to toll or delay judicial deadlines in the event a terrorist attack or other emergency prevented the courts from conducting trials and other court proceedings. Congress responded to this concern the following year by adding § 11-947 to the

---

[4] *Mayor Bowser Declares Public Health Emergency*, GOVERNMENT OF THE DISTRICT OF COLUMBIA (March 11, 2020), https://mayor.dc.gov/release/mayor-bowser-declares-public-health-emergency https://perma.cc/KV82-SJSW.

[5] *Courts Suspending Jury Trials as COVID-19 Cases Surge*, UNITED STATES COURTS (Nov. 20, 2020), https://www.uscourts.gov/news/2020/11/20/courts-suspending-jury-trials-covid-19-cases-surge https://perma.cc/FG8M-XRC2.

[6] *Scientific Brief:  SARS-COV-2 and Potential Airborne Transmission*, CENTERS FOR DISEASE CONTROL AND PROTECTION (Oct. 5, 2020), https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html https://perma.cc/X4A7-96Z8.

District of Columbia Code. Section 11-947 furnishes the Chief Judge of the Superior

Court (S.C.C.J.) with the authority to extend deadlines "[i]n the event of a natural

disaster or other emergency situation requiring the closure of Superior Court or

rendering it impracticable for the United States or District of Columbia Government

or a class of litigants to comply with deadlines imposed by any Federal or District

of Columbia law or rule that applies in the Superior Court[.]"[7]  The Senate

Committee Report on this legislation specifically anticipated that an outbreak of life-

threatening disease could be the kind of event that would create an "emergency

situation" calling for exercise of the authority granted by § 11-947.[8]

Subsection (a)(2) describes the "scope" of the emergency tolling authority

vested in the S.C.C.J. as follows:

> (A) The chief judge may enter such order or orders as may
> be appropriate to delay, toll, or otherwise grant relief
> from the time deadlines imposed by otherwise
> applicable laws or rules for such period as may be
> appropriate for any class of cases pending or
> thereafter filed in the Superior Court.

---

[7] *See* D.C. Courts and Public Defender Service Act of 2011, Pub. L. No. 112-229, §2(b), 126 Stat. 1611, 1611-12 (2012); D.C. Code § 11-947(a)(1); S. Rep. No. 112-178, at 3 (2012).

[8] *Id.* at 4 ("Examples of emergency situations are explosions, acts of terrorism, enemy attacks, sabotage, disease, or another manmade cause that results in an imminent threat, severe damage, or injury to life or property.").

(B) The authority conferred by this section extends to all laws and rules affecting criminal and juvenile proceedings (including, pre-arrest, post-arrest, pretrial, trial, and post-trial procedures) and civil, family, domestic violence, probate and tax proceedings.[9]

The only explicit statutory limitation on the scope of the S.C.C.J.'s emergency authority is the proviso that "[n]othing in this section shall be construed to authorize suspension of the writ of habeas corpus."[10]

To ensure that the "emergency authority [is] used sparingly and only in extraordinary circumstances,"[11] § 11-947 provides that orders tolling or extending deadlines beyond fourteen days require the consent of the D.C. Courts' Joint Committee on Judicial Administration[12] and must be reported to Congress. The

---

[9] In exercising emergency authority to toll deadlines in criminal cases, the S.C.C.J. is directed to "consider the ability of the United States or District of Columbia Government to investigate, litigate, and process defendants during and after the emergency situation, as well as the ability of criminal defendants as a class to prepare their defenses." D.C. Code § 11-947(b).

[10] *Id.* § 11-947(a)(4).

[11] S. Rep. No. 112-178, at 4 (2012).

[12] D.C. Code § 11-947(d)-(g). The Joint Committee on Judicial Administration consists of the Chief Judge and two associate judges of the Superior Court and the Chief Judge and one associate judge of the Court of Appeals. *Id.* § 11-1701(a). The Joint Committee has overarching statutorily specified responsibilities

Congressional reports must describe the reasons for the orders, their duration, their effects on litigants, and their costs to the court.[13]

With the Joint Committee's consent, the S.C.C.J. has exercised the emergency authority granted by § 11-947 in response to the COVID-19 pandemic. On March 18, 2020, the S.C.C.J. issued the first in a series of deadline-tolling orders; it tolled "all deadlines and time limits in statutes, court rules, and standing and other orders that would otherwise expire before May 15, 2020."[14] On May 14, 2020, the S.C.C.J. issued a similar order effective through June 19, 2020.[15] This order made it explicit that the suspension applied to time limits under the pretrial detention statute, D.C. Code § 23-1322, among other statutory time limits.[16] Since then, the S.C.C.J. has

---

for the administration of the District of Columbia court system. *See id.* § 11-1701(b)-(d).

[13] *Id.* § 11-947(f).

[14] Superior Court of the District of Columbia Order (Mar. 18, 2020), https://www.dccourts.gov/sites/default/files/Order-Attachment-PDFs/Order-3-19-20.pdf https://perma.cc/7Q98-F8C7.

[15] Superior Court of the District of Columbia Order (May 14, 2020), https://www.dccourts.gov/sites/default/files/matters-docs/General%20Order%20pdf/Amended-Order-5-14-20.pdf https://perma.cc/6RXQ-K9H4.

[16] *Id.*

(as of this writing) issued four substantially similar orders, the most recent of which tolls deadlines at least until March 31, 2021.[17]

The Superior Court's Criminal Division has announced plans to schedule trials for pretrial detainees after that date. On January 15, 2021, the Criminal Division published a notice of its intent to resume jury trials in non-violent felony cases in which the defendant is detained pursuant to § 23-1322(b), except for sex offense cases. For all such defendants, the Division anticipates an upcoming trial readiness hearing at which "a trial date will be set at least sixty days in advance on or after March 22, 2021."[18] The notice goes on to state that "[t]he Criminal Division

---

[17] *See* Superior Court of the District of Columbia Order (June 19, 2020), https://www.dccourts.gov/sites/default/files/matters-docs/General%20Order%20pdf/Amended-Order-6-19-20-FINAL.pdf https://perma.cc/HTX9-SJQ8 (tolling deadlines through August 14, 2020); Superior Court of the District of Columbia Order (Aug. 13, 2020), https://www.dccourts.gov/sites/default/files/matters-docs/General%20Order%20pdf/Amended-Order-8-13-20-FINAL.pdf https://perma.cc/UM3D-L35K (tolling deadlines through Nov. 9, 2020); Superior Court of the District of Columbia Order (November 5, 2020), https://www.dccourts.gov/sites/default/files/matters-docs/General%20Order%20pdf/Amended-Order-11-5-20_FINAL.PDF https://perma.cc/6FLV-F5QV (tolling deadlines through January 15, 2021); Superior Court of the District of Columbia Order (Jan. 13, 2021), https://www.dccourts.gov/sites/default/files/matters-docs/General%20Order%20pdf/Amended-Order-1-13-21_FINAL.PDF https://perma.cc/929J-UVJG (tolling deadlines through March 31, 2021).

[18] Notice of Intent to Resume Criminal Division Jury Trials in Felony 2 Cases Previously Set for Trial in Which Defendant is Detained Pursuant to D.C. Code 23-

has undertaken to identify all cases previously set for a jury trial in which the defendant remains detained and has prioritized, to the extent practicable, the setting of trial readiness hearings in such cases based upon length and statutory basis of detention."[19]

## II.

Appellants are being held for trial pursuant to a pretrial detention statute originally enacted by Congress in 1970.[20] Its current provisions governing the time limits on detention date back to 2001,[21] and so were on the books when Congress

---

1322 (b) (Jan. 15, 2021), https://www.dccourts.gov/sites/default/files/Notice-of-Intent-to-Resume-Felony-2-Jury-Trials.pdf https://perma.cc/HL5F-KH74. Trial dates will be "contingent upon no further restrictions on governmental operations being imposed in the District of Columbia . . . , the approval of the District of Columbia Department of Health, and the ability to summon jurors and conduct trials in a manner consistent with public health and the safety of all participants and the due process rights of the defendant." *Id.*

[19] *Id.* While § 23-1322 sets a limit on the duration of pretrial detention imposed under that statute, another pretrial detention statute, D.C. Code § 23-1325 (which provides for pretrial detention of defendants charged with murder or assault with intent to kill while armed) contains no durational limitation.

[20] District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91-358, 84 Stat. 644.

[21] *See* Bail Reform Act of 2000, D.C. Law 13-310, § 2(b)(3), 48 D.C. Reg. 1648, 1649 (amending D.C. Code § 23-1322(h), effective June 12, 2001).

enacted § 11-947. D.C. Code § 23-1322(b) provides that, in specified criminal cases,[22] the defendant shall be detained before trial if the court finds by clear and convincing evidence that "no condition or combination of conditions [of release] will reasonably assure the appearance of the person as required, and the safety of any other person and the community."[23] The statute further provides that, "consistent with the sound administration of justice," a defendant who is detained pretrial "shall have trial of the case commence before the expiration of 100 days."[24] For "good cause shown," however, the court may extend the period of authorized detention in twenty-day increments "for the additional time required to prepare for the expedited . . . trial of the person."[25] There is no statutory limit on the number of twenty-day extensions the court may grant for good cause.[26] Section 23-1322(h)(1)

---

[22] *See* § 23-1322(b)(1) (2020 Supp.).

[23] § 23-1322(b)(2).

[24] § 23-1322(h)(1). In computing the 100 days, certain periods of time are excluded, including any period in which the defendant is, for any reason, "unavailable for trial." § 23-1322(h)(4)(D).

[25] § 23-1322(h)(1).

[26] Prior to its amendment in 2001, the statute allowed only a single twenty-day extension of pretrial detention for good cause shown. D.C. Code § 23-1322(h)(1) (2000). The Bail Reform Act of 2000, however, amended subsection (h) to permit the court to grant one or more extensions of the 100-day period of pretrial detention for good cause shown. *Id.* at § 2(b)(3) (effective June 12, 2001).

provides some examples of circumstances constituting good cause, but states that good cause "is not limited to" those examples.[27] A defendant who is not brought to trial within the maximum period of detention allowed under the statute is entitled to be released pending trial on appropriate conditions set by the court.[28]

Appellants Jordan and Sharps are detained pending trial pursuant to § 23-1322(b). Mr. Jordan, who was arrested in May 2020, is charged with first-degree sexual abuse while armed, and other offenses. He is alleged to have followed the complainant on the street late one night in January 2006, forced her into an alley at gunpoint, robbed her, and compelled her to perform oral sex. Mr. Jordan was not

---

[27] *Id.* ("Good cause may include, but is not limited to, the unavailability of an essential witness, the necessity for forensic analysis of evidence, the ability to conduct a joint trial with a co-defendant or co-defendants, severance of co-defendants which permits only one trial to commence within the time period, complex or major investigations, complex or difficult legal issues, scheduling conflicts which arise shortly before the scheduled trial date, the inability to proceed to trial because of action taken by or at the behest of the defendant, and agreement between the government and the defense to dispose of a case by a guilty plea on or after the scheduled trial date, or the breakdown of a plea on or immediately before the trial date[.]").

[28] § 23-1322(h)(3) ("After 100 days, as computed under paragraphs (2) and (4) of this section, or such period or periods of detention as extended under paragraph (1) of this section, the defendant shall be treated in accordance with § 23-1321(a) unless the trial is in progress, has been delayed by the timely filing of motions, excluding motions for continuance, or has been delayed at the request of the defendant.").

identified as the perpetrator until April 2020, when forensic testing allegedly confirmed the presence of his DNA in a semen sample recovered from the victim's clothing. After a hearing following Mr. Jordan's arrest, the trial court concluded that no conditions of release would reasonably assure the safety of the community given the nature and circumstances of the charged offense, the weight of the evidence against Mr. Jordan, his previous convictions for attempted robbery and unlawful possession of a firearm, and his history of re-offending while under supervision. In September 2020, Mr. Jordan filed a bond review motion, arguing that his continued detention without trial due to the emergency tolling orders was neither statutorily authorized nor constitutional. The trial court (Beck, J.) denied the motion, and this appeal followed.

Mr. Sharps is charged along with two co-defendants with armed kidnapping, armed robbery, armed burglary, armed assaults, and other offenses arising from a robbery of a marijuana dispensary. He and his alleged accomplices were caught by police officers who pursued the perpetrators as they fled from the scene. Other evidence against Mr. Sharps and his co-defendants allegedly includes the dispensary's surveillance video footage, in which Mr. Sharps is identifiable, and DNA evidence from firearms recovered by police in the robbers' flight path. Considering, as well, Mr. Sharps's prior convictions for burglary, robbery, assault

and other crimes, the trial court ordered his pretrial detention in October 2019.[29]  Mr. Sharps filed his motion for release in September 2020.[30]  Like Mr. Jordan, Mr. Sharps objected to the extension of his detention by the emergency tolling orders. The trial court (Kravitz, J.) denied the motion, and Mr. Sharps took this appeal.

## III.

We begin by addressing appellants' non-constitutional claim that D.C. Code § 11-947 does not provide emergency authority to extend pretrial detentions under § 23-1322(b).  In support of that claim, appellants make several points.  First, they argue that the absence, in § 11-947, of any mention of the time limitation on pretrial detentions implies Congress did not intend the emergency tolling statute to apply to that limitation.  Second, appellants argue that the 100-day provision in § 23-1322(h)(1) is not a "time deadline" subject to tolling under § 11-947.  Third, appellants assert that secondary canons of statutory construction, and principles of constitutional avoidance, counsel against construing § 11-947 as authorizing

---

[29] Although the robbery of the marijuana dispensary occurred in February 2019, and the police caught and questioned Mr. Sharps at that time, he was not formally charged until some eight months later.

[30] The record indicates that Mr. Sharps had agreed to toll the running of the 100-day trial clock until mid-June 2020 to engage in plea negotiations.  Thus, the hundred days had not run before the issuance of the emergency orders.

emergency extensions of the time limit on pretrial detention in § 23-1322. Finally, appellants argue that interpreting § 11-947 to allow such emergency extensions is inconsistent with the principle that pretrial detention laws like § 23-1322 are construed strictly in view of the liberty interests at stake for detainees.

The United States responds that the plain language of § 11-947 unambiguously grants the S.C.C.J. authority to suspend time deadlines in § 23-1322 in an emergency. The government further maintains that the 100-day requirement is a "time deadline" within the meaning of § 11-947 because it "establish[es] a cutoff date[] by which a detained defendant must be indicted and brought to trial."[31] And the government argues that the principle of strict construction applies only to detention statutes, not "to an emergency statute such as . . . § 11-947, which is governed by ordinary rules of statutory construction[,]"[32] and that secondary canons of construction and principles of constitutional avoidance are irrelevant because § 11-947 is unambiguous on the point at issue.

---

[31] Appellee's Opp'n to Emergency Mot. for Summ. Reversal of Detention Order and Cross-Mot. for Summ. Affirmance at 9 (Oct. 26, 2020).

[32] *Id.* at 12.

We review questions of statutory interpretation de novo.[33]  In doing so, "[o]ur aim is to ascertain and give effect to the legislature's intent[.]"[34]  The "primary and general rule" we follow is that "the intent of the lawmaker is to be found in the language that [it] has used."[35]  In examining that language, "it is axiomatic that the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them."[36]  "We will give effect to the plain meaning of a statute when the language is unambiguous and does not produce an absurd result.  We may also look to the legislative history to ensure that our interpretation is consistent with legislative intent."[37]

This appeal is the first time our court has had occasion to interpret § 11-947. We agree with the government that Congress intended that statute to authorize emergency orders tolling time deadlines pertaining to pretrial detention.  Although § 11-947 does not expressly mention § 23-1322(b) or pretrial detention, it empowers

---

[33] *Eaglin v. District of Columbia*, 123 A.3d 953, 955 (D.C. 2015).

[34] *Kornegay v. United States*, 236 A.3d 414, 418 (D.C. 2020) (internal quotation marks and citation omitted).

[35] *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (quotation marks and citations omitted).

[36] *Id.* (quotation marks and citations omitted).

[37] *Facebook, Inc. v. Wint*, 199 A.3d 625, 628 (D.C. 2019).

the S.C.C.J. in plain language to alter "deadlines imposed by *any* Federal or District of Columbia law or rule that applies in Superior Court"; and, lest there be any question, Congress emphasized that this authority "extends to *all* laws and rules affecting criminal . . . proceedings," specifically including pretrial procedures in those proceedings.[38] Section 23-1322(b) is unquestionably a law affecting criminal pretrial proceedings in Superior Court. The plain and ordinary meaning of the words "any" and "all" therefore permit no *sub silentio* exemption of § 23-1322(b) from the across-the-board purview of § 11-947.[39] Moreover, we cannot treat the absence of such an exemption as an oversight—and not just because we have no basis for doing so. Congress demonstrably considered the question of exemptions and chose to make one and only one, which is set forth in the explicit clarification in § 11-947(a)(4) that the statute furnishes no authority to suspend the writ of habeas corpus. "Where Congress explicitly enumerates certain exceptions . . . additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."[40]

---

[38] *Id.* § 11-947(a)(1), (2)(B) (emphases added).

[39] *See United States v. Gonzalez*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (1976)); *All*, MERRIAM-WEBSTER.COM DICTIONARY ("[T]he whole amount, quantity, or extent of.").

[40] *Andrus v. Glover Const. Co.,* 446 U.S. 608, 616–17 (1980).

There is no evidence of a contrary intent in the text of § 11-947, and we have found none in its legislative history. In the absence of such evidence, we "must presume" Congress said what it meant and meant what it said.[41]

We likewise are not persuaded by appellants' claim that the 100-day limitation on pretrial detention in § 23-1322(h)(1) does not constitute a "time deadline" within the meaning of § 11-947. The word "deadline" is not a term of art with a specialized meaning; it simply means "the latest time by which something must be done."[42] Appellants assert that the 100-day mark is "not a date 'before which something must be done,' but [rather] a date at which the court's authority to deprive a [detained]

---

[41] *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–42 (1989); *United States v. Goldenberg*, 168 U.S. 95, 102–03 (1897); *Oneale v. Thornton*, 6 Cranch 53, 68 (1810)).

[42] *Cf. Deadline*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A cutoff date for taking some action."); *Deadline*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011) ("A time limit, as for payment of a debt or completion of an assignment."); *Deadline*, COLLINS ENGLISH DICTIONARY (13th ed. 2018) ("[A] time or date before which a particular task must be finished or a particular thing must be done."); *Deadline*, MERRIAM-WEBSTER.COM DICTIONARY ("[A] date or time before which something must be done.").

defendant of liberty expires."[43]  But the first half of that assertion is erroneous, and the second half is misleading.

The 100-day mark *is* a date by which something must be done—it is the date by which the court must try a detained defendant or else set conditions for the defendant's release; it therefore is a deadline, and it is no less so merely because the failure to meet it does not bar the government from proceeding to trial thereafter.[44] As the Supreme Court has explained, "a deadline [can] seek speed by creating a time-related directive that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed."[45]  Thus, contrary to appellants' argument, the fact that the government still may prosecute a defendant who was detained under § 23-1322(b)

---

[43] Appellant Jordan's Reply to Government's Opp'n to Emergency Mot. for Summ. Reversal and Opp'n to Government's Cross-Mot. for Summ. Affirmance at 2–3 (Oct. 29, 2020).

[44] *See Mack v. United States*, 637 A.2d 430, 434 (D.C. 1994) (holding that "the government's right to proceed with the trial is not affected" by the expiration of the time limit on the duration of detention imposed by § 23-1322(h)(1)).

[45] *Dolan v. United States*, 560 U.S. 605, 611 (2010); *see also id.* at 607 (referring to a federal law providing that "the court shall set a date for the final determination of the victim's losses, *not to exceed 90 days after sentencing*" as imposing a "90-day deadline").

even after 100 days have elapsed does not alter our conclusion that § 23-1322(h)(1) contains a time deadline.

And (turning to appellants' alternative characterization) if the 100-day mark is the date the court's authority to detain a defendant expires—which is true only if the government does not meet the deadline (as we would say) of bringing the defendant to trial by that date—then for that reason too it is the date by which the court must do something, namely, provide for the detained defendant's release. So to put it more accurately than appellants have, § 23-1322(h)(1) sets a court "deadline" for either trying the detained defendant or setting conditions for the defendant's release.

This court previously used the word "deadline," appropriately and in its ordinary sense, when it referred in 2009 to the "100-day trial *deadline*" in § 23-1322(h)(1).[46] The court did not misspeak. It is a "time deadline" to which § 11-947 clearly applies.[47]

---

[46] *Ferguson v. United States,* 977 A.2d 993, 1000 (D.C. 2009).

[47] The dissent objects that our plain-meaning construction of the term "deadline" in § 11-947 "defies logic" because it would allow the S.C.C.J. to invoke the statute "to extend any number of significant intrusions on liberty"—for example, the dissent says, to lengthen a criminal defendant's prison sentence "beyond the statutory maximum for all crimes under the D.C. Code," or a post-conviction sex

As the language of § 11-947 is clear and unambiguous, we have no occasion to rely on the principle of constitutional avoidance in interpreting the statute.[48] The

_____

offender's registration period beyond the statutory ten-year limit—which Congress "surely" did not intend and which would "undoubtedly" be unconstitutional. *Post* at 44-45. This objection is not well-taken.

The emergency tolling authority granted the S.C.C.J. by § 11-947 is not a free-wheeling authority to extend deadlines wherever they exist in the law. It is limited to those deadlines, such as the 100-day clock on trying a defendant or setting the defendant's conditions of release, that come up in disrupted Superior Court "proceedings." The mini-parade of horribles imagined by the dissent does not involve deadlines involved in court proceedings, so the statute cannot be invoked to alter such things as a defendant's sentence or sex offender registration period. Because there is no realistic possibility of the statute being used as the dissent fears, our interpretation of it should not be governed by "terror of [the dissent's] extreme hypotheticals." *United States v. Brown*, 740 F.3d 145, 150 n.10 (3rd Cir. 2014) (citation and internal quotation marks omitted). In the highly unlikely (if not inconceivable) event that § 11-947 were to be invoked in one of the dissent's hypothetical and unreal scenarios, the patent unconstitutionality of doing so suffices to dispel the dissent's angst over the breadth of the term "deadline." "[W]e do not impute to Congress an intent to pass legislation that is inconsistent with the Constitution." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994) (citing *Yates v. United States*, 354 U.S. 298, 319 (1957)).

[48] *See Facebook, Inc. v. Wint*, 199 A.3d 625, 633 (D.C. 2019) ("Because we find the SCA to be unambiguous on the point at issue in this case, we see no basis for applying the doctrine of avoidance."); *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009) ("[C]onstitutional avoidance is an interpretive tool, counseling that *ambiguous* statutory language be construed to avoid serious constitutional doubts.") (emphasis added); *see also, e.g.*, *Jennings v. Rodriguez*, 138 S.Ct. 830, 843 (2018) (explaining that the doctrine of constitutional avoidance is pertinent when a court must "choos[e] between competing *plausible* interpretations of a statutory text," but merely "[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases" (emphasis in original; citation omitted)).

same holds true for "*expressio unius est exclusio alterius*," a secondary canon of statutory construction that appellants invoke.[49]   In any event, we consider the constitutional avoidance principle inapposite because (as we explain below) we entertain no serious doubt of the facial constitutionality of emergency orders issued under § 11-947 to extend pretrial detention under § 23-1322(b).   And appellants' reliance on the *expressio unius* canon, which posits that "when a legislature makes express mention of one thing, the exclusion of others is implied,"[50] is also misplaced.   Appellants argue that § 23-1322(h)(4) lists eight time periods that do not count towards the computation of the 100-day period, without mentioning emergency tolling among them—implying, they claim, that emergency tolling pursuant to § 11-947 cannot enlarge the maximum authorized period of detention.   For more than one reason, this argument is defective.   First, it misapprehends the purpose and effect of an emergency deadline-tolling order under § 11-947.   It does not specify an

---

[49] *See, e.g.*, *Hubb v. State Farm Mut. Auto. Ins. Co.*, 85 A.3d 836, 842–43 (D.C. 2014) ("[E]*xpressio unius est exclusio alterius* . . . is an aid to construction of a statute rather than a rule of law.  We . . . ignore such an aid when the plain meaning of the statute and the intent of the legislature is clear from the expressed words in the statute.") (citing *Council of District of Columbia v. Clay,* 683 A.2d 1385, 1390 (D.C. 1996)).  Reliance on the rule of lenity, another interpretive canon cited by appellants, fails for the same reason. *See Fleming v. United States*, 224 A.3d 213, 228 (D.C. 2020) (en banc) (explaining that the rule of lenity "is to be invoked only where the statutory language, structure, purpose, and history leave the intent of the legislature in genuine doubt (internal quotation marks and citation omitted)).

[50] *Odeniran v. Hanley Wood, LLC*, 985 A.2d 421, 427 (D.C. 2009).

additional time period to be left out of the 100-day computation, but rather extends the authorized period of detention beyond 100 days by suspending the 100-day deadline altogether.[51] Second, the *expressio unius* argument overlooks the fact that the pretrial detention statute expressly contemplates extensions of detention beyond the computed 100 days for "good cause shown," a term that is explicitly not limited to any exclusive list of circumstances. Third, and perhaps most fundamentally, appellants' *expressio unius* argument focuses on the wrong statute—the issue before us is how to construe § 11-947, not § 23-1322. As we saw in discussing the sole exception (for habeas corpus) to the scope of emergency authority granted by § 11-947, application of the *expressio unius* canon to construe that statute actually *supports* its applicability to pretrial detention orders.

To the extent appellants rely on the canon that when two statutes are in irreconcilable conflict, the more specific statute governs the more general one

---

[51] *See J.P. v. District of Columbia*, 189 A.3d 212, 218 (D.C. 2018) ("[T]he canon *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice." (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003))).

"unless it appears that the legislature intended to make the general act controlling,"[52] they fare no better. For the reasons we already have given, we are convinced that Congress *did* intend to make § 11-947 controlling, since it plainly extends to *all* statutory deadlines affecting criminal proceedings and was enacted later in time than § 23-1322(h). Moreover, as we next discuss, the perceived conflict is illusory—a statute that allows deadline extensions of trials for good cause shown cannot be said to conflict with a statute that allows such extensions when an emergency makes trial impossible.

That we construe pretrial detention statutes strictly "to ensure that defendants are not detained without bond 'unless the lawmaker has clearly said they should be'"[53] would not warrant rejecting what we take to be the plain language and meaning of § 11-947, even if appellants were correct in viewing the emergency statute as effecting a "major expansion" of preventive detention under § 23-1322(b).[54] That view, however, is not correct. We do not construe § 11-947 to

---

[52] *Speyer v. Barry*, 588 A.2d 1147, 1163 (D.C. 1991) (quoting 2A N. Singer, Sutherland Statutory Construction § 51.05 (4th ed. 1973)).

[53] *Blackson v. United States*, 897 A.2d 187, 194 (D.C. 2006) (quoting *Pope v. United States*, 739 A.2d 819, 825 (D.C. 1999)).

[54] *See Covington v. United States*, 698 A.2d 1033, 1036 n.6 (D.C. 1997) ("We think it unlikely that the Council would have enacted a major expansion of the

authorize any prolongation of pretrial detention that is not already obtainable under the terms of the detention statute itself. If an emergency (such as the COVID-19 pandemic) is so serious that it prevents the Superior Court from holding jury trials, we have no doubt it would constitute "good cause" for extending the trial deadline for pretrial detainees within the meaning of § 23-1322(h)(1). It follows that even if § 11-947 did not exist, the government would nevertheless—where the emergency is on-going, as under the current circumstances—be able to obtain successive twenty-day extensions of the pretrial detention periods of defendants being held under § 23-1322(b). Procedurally, of course, this alternative would be quite cumbersome, as the government would need to apply for additional extensions in each individual case every three weeks or so. But substantively, there is no difference between such repeated extensions for good cause and § 11-947's tolling provisions, which allow the Superior Court to much more efficiently prolong pretrial detention across the board for the exact same reasons. Thus, there is no substantive inconsistency between our interpretation of the scope of the emergency authority granted by § 11-947 and the court's existing authority to extend the duration of pretrial detention under § 23-1322(b).

---

availability of preventive detention . . . without any debate or explicit consideration whatever.").

**IV.**

We turn to appellants' constitutional arguments, starting with their substantive

due process claims, and specifically with the facial challenge they present.

**A.**

The Fifth Amendment's Due Process Clause guarantees that "[n]o person

shall . . . be deprived of life, liberty, or property, without due process of law[.]"[55]

"The Due Process Clause ensures more than fair process in the deprivation of liberty,

however, for it also contains a substantive component that provides heightened

protection against government interference with . . . those fundamental rights and

liberties which are . . . implicit in the concept of ordered liberty[.]"[56] The Supreme

Court has held that substantive due process shields detainees from "punish[ment]

prior to an adjudication of guilt."[57]

---

[55] U.S. Const. amend. V.

[56] *Jordan v. United States*, 235 A.3d 808, 815 (D.C. 2020) (citing *Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997) and *In re W.M.*, 851 A.2d 431, 447 (D.C. 2004)).

[57] *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979) (citing *Ingraham v. Wright*, 430 U.S. 651, 671–72 n.40, 674 (1977); *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 165–67, 186 (1963); and *Wong v. United States*, 163 U.S. 228, 237 (1896)).

Appellants contend that if § 11-947 authorizes emergency extensions of the 100-day trial deadline in § 23-1322(h), as we hold it does, then it offends the foregoing principles of substantive due process and creates a facially unconstitutional detention. Relying on *United States v. Salerno*,[58] appellants argue that to comply with the mandates of substantive due process, "a pretrial detention scheme must sharply limit the scope and duration of detention."[59] The United States replies that "specified time deadlines on pretrial detention are not constitutionally mandated" and that "preventive detention is constitutionally tolerable as long as it serves a legitimate regulatory goal."[60] The government has the better of the argument.

A facial constitutional challenge to a law must overcome significant hurdles, for the challenger "can only succeed by establishing that no set of circumstances exist under which the [statute] would be valid, i.e. that the law is unconstitutional in

---

[58] 481 U.S. 739 (1987).

[59] Appellant Jordan's Emergency Mot. for Summ. Reversal at 8 (Oct. 19, 2020).

[60] Appellee's Opp'n to Emergency Mot. for Summ. Reversal of Detention Order and Cross-Mot. for Summ. Affirmance at 17–18 (Oct. 26, 2020).

all of its applications."[61] In *Salerno*, the Supreme Court rejected a facial substantive due process challenge to preventive pretrial detention under the federal Bail Reform Act of 1984 (BRA), a statute modeled on the District's pretrial detention statute.[62] Recognizing the compelling governmental interests in ensuring the safety of the community and a defendant's appearance at trial, the Court upheld temporary preventive detention of dangerous defendants under the BRA as being regulatory rather than punitive in nature, and hence not facially invalid. In so doing, the Court reasoned that the law provided adequate substantive and procedural safeguards to ensure that the detention was not punitive:

> [The BRA] carefully limits the circumstances under which detention may be sought to the most serious of crimes. The arrestee is entitled to a prompt detention hearing . . . and *the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act.* Moreover . . . the conditions of confinement envisioned by the Act appear to reflect the regulatory purposes relied upon by the Government.[63]

---

[61] *Plummer v. United States*, 983 A.2d 323, 338 (D.C. 2009) (citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008); *Salerno*, 481 U.S. at 745; *Gonzales v. Carhart*, 550 U.S. 124, 167 (2007); and *Rust v. Sullivan*, 500 U.S. 173, 183 (1991)).

[62] *Salerno*, 481 U.S. at 741.

[63] *Id.* at 747 (internal citations and quotation marks omitted) (emphasis added).

Picking up on the italicized language in the foregoing passage, appellants argue that emergency tolling of the 100-day trial deadline in § 23-1322(b) pursuant to § 11-947 unconstitutionally permits prolonged pretrial detention without "stringent time limitations" ensuring that the detention is not punitive.

In making this claim, however, appellants essentially reprise an argument that a post-*Salerno* decision of this court already has rejected. In *McPherson v. United States*, the appellant, Ms. McPherson, challenged the constitutionality of D.C. Code § 23-1325(a), a companion pretrial detention statute for defendants charged with murder or assault with intent to kill while armed.[64] That statute, unlike § 23-1322, contains no deadline at all for bringing a detained defendant to trial or releasing the defendant. Much like appellants in the present case, Ms. McPherson argued that § 23-1325(a) is facially invalid because the Due Process Clause "forbids governments from depriving individuals of liberty before trial without stringent time limitations to assure that detention is used strictly for the regulatory purpose of preserving the status quo before trial, and not as a substitute to trial and conviction."[65] This court disagreed and upheld the facial validity of § 23-1325(a),

---

[64] 692 A.2d 1342, 1344 (D.C. 1997).

[65] *Id.* at 1346.

stating it "kn[e]w of no case that recognizes a constitutional right to liberty before trial after the passage of a particular time period."[66]

Like appellants, Ms. McPherson relied for support of her due process claim on the Supreme Court's decision in *Foucha v. Louisiana*, which struck down a state law permitting indefinite and possibly permanent confinement in a mental facility of a person found not guilty by reason of insanity "until he is able to demonstrate that he is not dangerous to himself and others, even though he does not suffer from any mental illness."[67] Several years later, in *Zadvydas v. Davis*, the Court avoided a somewhat similar problem of indefinite and possibly permanent confinement by construing a federal statute authorizing detention of a removable alien beyond ninety days "to contain an implicit 'reasonable time' limitation [six months], the application of which is subject to federal court review."[68] The Court's decisions in these cases turned on its recognition that petitioners' indefinite detentions could be "permanent" because they were terminable only by a contingent event that might never occur.[69]

---

[66] *Id.*

[67] 504 U.S. 71, 73 (1992).

[68] 533 U.S. 678, 682 (2001).

[69] *Foucha*, 504 U.S. at 83 ("Here . . . the State asserts that because Foucha once committed a criminal act and now has an antisocial personality that sometimes leads to aggressive conduct, a disorder for which there is no effective treatment, he

Pretrial detention under § 23-1322(b) due to § 11-947 emergency tolling orders is not "indefinite" in the sense of *Foucha* or *Zadvydas*. We do not dispute that a law authorizing pretrial detention of a truly indeterminate (and potentially permanent) duration would offend substantive due process, as such a statute would be punitive rather than permissibly regulatory. But appellants do not and cannot contend that emergency tolling means pretrial detention can or will continue indefinitely without trials ever being scheduled and held.[70] Emergency tolling ends when the emergency ends, or is overcome. Even if there may be uncertainty as to when that will happen, the statutory premise is that it *will* happen in the foreseeable future and that trials will then resume. In *Zadvydas*, to avoid any question of unconstitutionality, the Supreme Court construed the federal law to permit prolonged detention of non-citizens on the condition that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."[71]

---

may be held indefinitely."); *Zadvydas*, 533 U.S. at 692 ("The serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection is obvious.").

[70] *Cf. McPherson*, 692 A.2d at 1346 (explaining that Ms. McPherson was "not being confined indefinitely" merely because the pretrial detention statute did not set a deadline by which her trial had to be commenced; "[r]ather, she is being confined only pretrial, or until the outcome of her trial").

[71] *Zadvydas*, 533 U.S. at 699.

Section 11-947 comports with such a limitation; once the triggering emergency is over and it becomes feasible to try the defendant, further extensions of pretrial detention are no longer authorized. And despite the persistence of the COVID-19 pandemic, it is still reasonably foreseeable that trials will resume in the Superior Court in the not-too-distant future.[72]

Appellants' facial challenge also overlooks key features of the statutory scheme at issue in *Salerno*. The BRA itself does not constrain the duration of preventive detention.[73] Instead, "Congress relied on the [federal] Speedy Trial Act . . . to limit the period of pretrial incarceration."[74] While the Speedy Trial Act sets a ninety-day deadline for commencing the trial of a detained person,[75] this deadline is not a firm one. The Act also provides a number of ways in which that deadline may be extended and the period of detention prolonged, including by allowing the

---

[72] As explained above, the Superior Court already has begun taking steps to resume jury trials for certain pretrial detainees whose trials have been delayed by the pandemic.

[73] *United States v. Accetturo*, 783 F.2d 382, 387 (3rd Cir. 1986) (explaining that, when drafting the BRA, the "Senate Judiciary Committee twice rejected a specific time period beyond which a defendant could not be incarcerated pretrial").

[74] *Id. See Salerno*, 481 U.S. at 741 ("[T]he maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act.").

[75] 18 U.S.C. § 3164(b).

trial court to grant a continuance based on "findings that the ends of justice served by taking such an action outweigh the best interest of the public and the defendant in a speedy trial."[76]

When the Supreme Court referred in *Salerno* to the "stringent time limitations" of the Speedy Trial Act, it doubtless was fully aware of this and other exceptions in that Act and their applicability to preventive detention under the BRA.[77] Thus, the Court must have been satisfied that the continuance-for-the-ends-of-justice option, which could prolong pretrial detention well beyond the prescribed ninety days, did not render the federal scheme impermissibly punitive.[78] Placed in this context, it is apparent that *Salerno*'s reference to "stringent time limitations" does not mean a pretrial detention statute must be inflexible in order to satisfy substantive due process. The flexibility supplied by the emergency tolling provisions of § 11-947 and, for that matter, by the provision for "good cause" extensions in § 23-1322(h), is consistent with statutory exceptions to pretrial

---

[76] 18 U.S.C. § 3161(h)(7)(A).

[77] *See United States v. Hare*, 873 F.2d 796, 800 (5th Cir. 1989).

[78] *Cf. id.* at 801 (noting that "the application of the complex-trial exception to the Speedy Trial Act does not by itself change the regulatory nature of pretrial detention.").

detention deadlines that *Salerno* implicitly approved. In fact, the provision for emergency continuances in § 11-947 arguably is *more* restrictive than the Speedy Trial Act continuances that many federal courts have relied on to lengthen pretrial detention periods during this pandemic[79] given that: (1) the S.C.C.J. must obtain the Joint Committee's consent before entering a tolling order for a period of more than fourteen days,[80] (2) the S.C.C.J must notify two congressional subcommittees of any such order and publish its text on the D.C. Courts website,[81] and (3) after the tolling order expires, the S.C.C.J. must submit reports to the same two subcommittees and the Joint Committee explaining the reasons for issuing the orders, their duration, their effect on litigants, and the resulting costs to the courts.[82] Taken together, these measures clearly indicate that § 11-947 "is regulatory, not penal."[83]

For the foregoing reasons, we hold that, on its face, pretrial detention under § 23-1322(b), as tolled in emergencies by § 11-947, remains "regulatory in nature,

---

[79] *See United States v. Taylor*, 2020 WL 7264070 *6 (D.D.C. 2020) (collecting cases where federal courts have granted Speedy Trial Act continuances postponing trials due to the pandemic).

[80] D.C. Code § 11-947(d).

[81] *Id.* § 11-947(e).

[82] *Id.* § 11-947(f).

[83] *Salerno*, 481 U.S. at 746.

and does not constitute punishment before trial in violation of the Due Process Clause."[84]  We therefore reject appellants' facial constitutional challenge.

**B.**

We do not foreclose as-applied due process challenges to the emergency extension of pretrial detention.  In *Salerno*, the Court acknowledged that there is a "point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal."[85]  Mr. Sharps claims his continuing detention is "excessive" and constitutes an as-applied violation of his right to substantive due process.  "In determining whether [Mr. Sharps's] pretrial detention violated his due process rights, we review the [Superior Court's] factual determinations for clear error.  The constitutional significance of those findings, including the ultimate determination of whether due process has been violated, is reviewed *de novo*."[86]  Mr. Sharps and the government agree on evaluating his due process claim under a three-factor test articulated by the Second

---

[84] *Id.* at 748.

[85] *Id.* at 747 n.4.

[86] *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000).  The government does not contend that Mr. Sharps forfeited or waived his as-applied claim by failing to flesh it out sufficiently in the proceedings below.

Circuit, which looks to (1) the length of detention and non-speculative future detention, (2) the extent to which the government bears responsibility for the delay in starting trial, and (3) the strength of the evidence supporting the conclusion that no combination of conditions of release can ensure the safety of the community or return to court.[87]

This court has not adopted the balancing test Mr. Sharps proposes,[88] but for present purposes we assume it is appropriate and will apply it. As to the first factor, Mr. Sharps has been held since October 2019, and he claims he is unlikely to be tried until late 2021. That is a period of approximately two years, a regrettably long time

---

[87] *See United States v. Orena*, 986 F.2d 628, 630 (2d. Cir. 1993); *cf. Hare*, 873 F.2d at 801 ("Like other circuits, we find that the due-process limit on the duration of preventive detention requires assessment on a case-by-case basis, for the clause establishes no specific limit on the length of pretrial confinement. In determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay." (Footnotes omitted)).

[88] *See Kleinbart v. United States*, 604 A.2d 861, 872 n.18 (D.C. 1992) (referencing the Second Circuit's test for "deciding whether the length of detention before trial violates due process") (citing *United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988), and *United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986)).

to be sure, but "the length of detention alone is not dispositive and 'will rarely by itself offend due process.'"[89]

The second factor does not weigh in Mr. Sharps's favor. He contends the government is responsible for the delay in starting his trial because it could have charged him in February 2019, when he was first stopped and questioned about the

---

[89] *El-Hage*, 213 F.3d at 81 (holding that pretrial detention lasting thirty to thirty-three months did not violate due process) (quoting *United States v. Millan*, 4 F.3d 1038, 1044 (2d Cir. 1993) (ruling that a thirty-one month pretrial detention was constitutional), and *United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994) (finding that pretrial detention expected to last twenty-seven months did not offend due process)); *United States v. Briggs*, 697 F.3d 98, 103 (2d. Cir. 2012) (holding that pre-trial detention of nearly twenty-six months did not violate due process); *United States v. Hill*, 462 F. App'x. 125, 127 (2d Cir. 2012) (same); *United States v. Vondette*, 5 F. App'x. 73, 75–76 (2d Cir. 2001) (holding that defendant's forty-month pretrial detention did not violate due process). Usually applying the Second Circuit's tripartite test, other courts have reached similar conclusions. *See, e.g.*, *United States v. Watson*, 475 F. App'x. 598, 603 (6th Cir. 2012) (holding that approximately twenty-month period of pretrial detention did not violate substantive due process); *United States v. Gonzalez*, 995 F. Supp. 1299, 1304 (D.N.M. 1998) (holding that pretrial detention of thirty-five to thirty-seven months did not violate substantive due process); *United States v. Landron–Class,* 705 F.Supp.2d 154, 156–57 (D.P.R. 2010) (holding that twenty-nine month pretrial detention did not offend due process); *United States v. Mohammed*, 2017 WL 2365247 *6 (N.D. Ohio 2017) (holding that projected twenty-two month detention did not violate substantive due process); *United States v. Telfair*, 2008 WL 5188846 *4 (D.N.J.) (same); *United States v. Flores*, 2018 WL 3530837 *2–*3 (C.D. Cal. 2018) (holding that fifty-two month pretrial detention did not violate substantive due process); *State v. Labrecque*, 2020 WL 5268718 *7–*8 (Vt. 2020) (holding that twenty-five month pretrial detention due to COVID-19 pandemic was not constitutionally excessive).

robbery of the marijuana dispensary, instead of waiting until October 2019 to do so. This argument is misguided because it pertains to the eight months *before* Mr. Sharps was preventively detained under § 23-1322(b). Once his pretrial detention began, the record shows that Mr. Sharps himself assented to the delay in proceeding to trial, because his counsel agreed to toll the 100-day clock so that Mr. Sharps could consider a plea offer. And Mr. Sharps does not assert, nor could he, that the government is responsible for the global pandemic that has prevented jury trials in the Superior Court.

Turning to the third factor—the strength of the evidence that Mr. Sharps is dangerous and that no combination of release conditions can ensure the safety of the community—the trial court's initial detention order relies on both the evidence supporting the current charges against Mr. Sharps (relating to the armed robbery of the marijuana dispensary and the assaults on and kidnapping of its employees) and his criminal record. As to his involvement in the dispensary incident, the detention order cites the following facts: (1) the police discovered Mr. Sharps hiding under a stairwell after fleeing the scene, in close proximity to a distinctively patterned coat that is prominent in surveillance video of the robbery, zip ties similar to those used to restrain the dispensary employees, and cash consistent with what was in the dispensary's register; (2) the surveillance video is "of high quality" and Mr. Sharps's

face is readily identifiable on it; (3) forensic evidence links Mr. Sharps to the firearms used in the robbery; and (4) a witness described Mr. Sharps's participation in the robbery to police. As to Mr. Sharps's criminal record, it includes many prior criminal convictions for burglary, assault, robbery, and firearms offenses. Suffice it for us to say that the third factor of Mr. Sharps's chosen balancing test does not tilt in his favor.[90]

---

[90] For much the same reasons, we are not persuaded by Mr. Sharps's alternative argument that the trial court was mistaken in concluding no combination of release conditions could reasonably assure the safety of the community. "In general, our review of a preventive detention order is limited. This court will not substitute its assessment of a defendant's dangerousness for the trial judge's determination of that essentially factual issue, and we will therefore sustain the judge's decision so long as it 'is supported by the proceedings below.'" *Pope*, 739 A.2d at 824 (quoting *Scott v. United States,* 633 A.2d 72, 73 (D.C.1993)). The trial court was presented with abundant proof triggering the statutory rebuttable presumption of dangerousness (based on the court's finding of probable cause that Mr. Sharps committed a crime of violence while armed, *see* §23-1322(c)(1)) when the court made its initial determination on pretrial detention under § 23-1322(b). Mr. Sharps argues that, when reviewing his subsequent bond review motion, the court should have given more weight to factors favorable to him, including his family ties, prior employment, health, and his lack of rearrests in the months between the date of the charged offenses and his arraignment. But this is not a basis for reversal. *Blackson*, 897 A.2d at 197 ("[I]t is not our function . . . to engage in the discretionary balancing of relevant factors that is committed to the trial court"). Mr. Sharps's bond review motion does not proffer any change in the circumstances regarding his dangerousness from what was presented to the trial court at his preliminary hearing in October 2019. Indeed, Mr. Sharps has not provided a transcript of that hearing. Thus, we cannot say that the trial court erred in declining to release him. *See Romero v. United States*, 956 A.2d 664, 668 (D.C. 2008) ("The appellant in any case bears the burden of presenting us with a record sufficient to show affirmatively that error occurred[.]") (citations omitted).

Considering all three factors, we conclude that he has not established that his continued pretrial detention for the protection of the community is unconstitutionally punitive.

**C.**

In addition to their substantive due process claims, appellants assert that the emergency extension of their pretrial detention violated their rights to procedural due process because the existing statutory procedures are inadequate to account for extended detention. We do not address appellants' procedural due process claims on the merits because they are not properly before us. Neither appellant raised procedural due process issues in the motions for release they made in Superior Court,[91] and it is well-established that "[n]ormally, a claim that was not raised or passed on in the trial court will be 'spurned' on appeal."[92] Moreover, even on appeal, appellants have not identified any specific procedures to which they were entitled

---

[91] Mr. Jordan's motion made a passing reference to procedural due process, but his arguments did not address it. Mr. Sharps's motion did not mention procedural due process at all.

[92] *Tilley v. United States*, 238 A.3d 961, 969 (D.C. 2020).

but were denied.[93]  We will not rule on a claim of constitutional violation under these circumstances.[94]

## IV.

For the foregoing reasons, we affirm the denials of appellants' motions for release from pretrial detention.

*So ordered.*

---

[93] *See Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see also Lowery v. United States*, 3 A.3d 1169, 1173 (D.C. 2010) ("[I]t is inherent in the nature of plain error review that appellant must make that showing based on the record on appeal:  '[I]t is appellant's duty to present this court with a record sufficient to show affirmatively that error occurred.'"  (punctuation omitted) (quoting *In re D.M.*, 993 A.2d 535, 542 n.16 (D.C. 2010), and *Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C. 1982))).

[94] *Cf. Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003) (declining to address whether a state law offended substantive due process because respondent framed his constitutional challenge in strictly procedural terms); *District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 182 (D.C. 1993) ("Courts should not decide more than the occasion demands.").

BECKWITH, *Associate Judge*, dissenting:  Under this court's case law, a judge cannot detain a person prior to trial unless there is express statutory authority for that detention, meaning "the lawmaker has clearly said they should be" detained.[1]  The trial court's orders detaining Mr. Jordan and Mr. Sharps are unlawful because neither D.C. Code § 23-1322(h) (2020 Supp.)—the "exclusive source of the court's power to order pretrial detention"[2]—nor the emergency tolling provision of D.C. Code § 11-947 (2020 Supp.) clearly authorizes their continued incarceration pending trial.  There may be persuasive arguments in favor of a statute authorizing indefinite emergency-related incarceration of pretrial detainees.  Right now the District has no such law.  For this reason, I respectfully dissent from my colleagues' conclusion that the trial court had statutory authority to detain Mr. Jordan and Mr. Sharps beyond the time authorized by § 23-1322.

As an initial matter, § 23-1322(h) itself does not allow these detentions— roughly 500 days thus far for Mr. Sharps and 300 days for Mr. Jordan—because its authority to detain is explicitly limited.  Section 23-1322(h) requires that defendants

---

[1]  *Blackson v. United States*, 897 A.2d 187, 194 (D.C. 2006).

[2]  *Best v. United States*, 651 A.2d 790, 792 (D.C. 1994); *Hazel v. United States*, 483 A.2d 1157, 1159 (D.C. 1984).  D.C. Code § 23-1325(a) sets forth the bases for detaining a different category of individuals—those charged with first- and second-degree murder and assault with intent to kill while armed.

facing the charges at issue be released after 100 days, absent a 20-day extension of time for good cause or an exclusion of time from the 100-day limit based on delays related to competency evaluations or the like. *See* D.C. Code § 23-1322(h)(4). Here, the government did not request an extension of time for good cause and did not seek to exclude time from the 100-day limit calculation. The trial court instead granted the government's request for detention based upon the Superior Court chief judge's order (and subsequent like orders) tolling all "deadlines and time limits" that would otherwise have expired during the pandemic. The chief judge issued this order pursuant to D.C. Code § 11-947, a law titled "Emergency authority to toll or delay proceedings," which allows the chief judge in an "emergency situation" to toll all "time deadlines" under D.C. law when it would be "impracticable" for the parties "to comply with" such deadlines. D.C. Code § 11-947(a). The question, then, is whether § 11-947 clearly authorizes detention past the 100-day limit set by § 23-1322(h).

The problem with relying on § 11-947 to extend § 23-1322's limited detention authority is that the emergency tolling statute does not expressly authorize such detention. The law's text says nothing about pretrial detention. Its legislative history says nothing about pretrial detention. The majority offers several creative, if hypertechnical, ways in which the 100-day limit on the power to detain might be

construed as a "deadline" that could be tolled under § 11-947.[3]  But the bottom line

is that the meaning of "deadline" is not clear in this context.  The thrust of the statute

is to toll or delay proceedings and to allow parties to finish difficult tasks under

difficult situations with reasonable leeway.  The law's drafters, some or all, may well

have deemed it sensible to toll any and all discovery, indictment, trial, and briefing

deadlines while having no intention of authorizing further pretrial detention of

people who are presumed to be innocent—many of whom, as counsel for Mr. Jordan

noted at oral argument, will eventually be acquitted, have their charges dropped, or

plead to charges carrying sentences that are less than the time they have already

served pretrial.  The tolling of procedural deadlines undoubtedly has consequences,

---

[3] The majority notes, for example, that in one decision this court characterized the 100-day limit as a "deadline" in passing. *Ante* at 19 (citing *Ferguson v. United States*, 977 A.2d 993, 1000 (D.C. 2009)).  My colleagues also suggest that the statement in § 11-947(a)(4) that "[n]othing in this section shall be construed to authorize suspension of the writ of habeas corpus" is evidence that Congress intended the statute to apply to pretrial detention. *Ante* at 16, 22.  At the outset, the government never mentioned the reference to habeas corpus in its pleadings and presumably accorded little significance to the provision.  The inclusion of such language in § 11-947—placed conspicuously apart from the terms setting out the statute's scope—in no way demonstrates that Congress contemplated and included all exemptions to the chief judge's authority.  And it in no way clearly establishes authority to detain, incarcerate, or otherwise infringe the liberty interests of people beyond clearly established time limits in other statutes.  The provision resembles the sort of caveat contained in many statutes by which the drafters make clear that they are aware of constitutional limits on their authority. *See, e.g.*, D.C. Code § 22-3022(a)(1) (2012 Repl.) (excluding certain evidence of a sex assault victim's past sexual behavior unless such evidence "is constitutionally required to be admitted").

and each day that goes by without an indictment, a trial date, or discovery disclosures may be detrimental to parties in myriad ways. Each additional day of pretrial incarceration, however, could mean the difference between a job and no job, or absence from the birth of one's child, or the risk of being physically assaulted or contracting a deadly virus. This court cannot credibly conclude that the legislators who passed a relatively straightforward statute tolling deadlines in emergencies must *necessarily* have also intended an unprecedented expansion of detention authority.

The majority concludes that even though § 11-947 does not mention § 23-1322 or pretrial detention, the breadth and generality of its terms establish its "across-the-board purview." *Ante* at 22. By the majority's logic, the chief judge could invoke § 11-947 to extend the time limit for any number of significant intrusions on liberty—post-conviction sex offender registration beyond the ten-year limit, jurisdiction of the family court over young people past their twenty-first birthday, or even prison sentences beyond the statutory maximum for all crimes under the D.C. Code. Increasing someone's actual sentence would undoubtedly run afoul of the Constitution in more ways than one,[4] but as a matter of statutory

---

[4] *See, e.g.*, *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."); *see also* U.S. Const. art. I, § 9, cl. 3 (Ex Post Facto Clause); *Solomon v.*

interpretation, the government could fairly argue, under the majority's theory, that Congress must have intended all of these expansions by allowing the tolling of "timing deadlines." Congress surely intended none of these, however, and it defies logic to construe the term "deadline" in a way that plainly includes them.[5]

Even if Congress did intend such an expansion, it did not say so clearly, and it easily could have. It is "unlikely that the [legislature] would have enacted a major expansion of the availability of pretrial detention . . . without any debate or explicit consideration whatever." *Covington v. United States*, 698 A.2d 1033, 1036 n.6 (D.C. 1997) (strictly construing a statute authorizing preventive detention based on a risk of witness intimidation). In the majority's view, extending the pretrial detention of people like Mr. Jordan and Mr. Sharps under § 11-947 does not significantly expand

---

*United States*, 120 A.3d 618, 621 (D.C. 2015) (stating that an Ex Post Facto Law includes a law "that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed").

[5] The majority refers to the dissent's "angst" over this "mini parade of horribles," but this dissent is not animated by any feeling that Congress did something wrong. The point is that the majority is incorrect about what Congress intended, and among the reasons we know it is wrong is that it does not make sense that Congress, without clearly saying so in the legislative history or in the statute's own words, would have expanded detention authority in a way that encompasses these examples. What *is* one of the horribles is the effect of the majority's reading: prolonged detention on the basis of probable cause alone without any effective mechanism to ensure that the basis of that detention is still justified after it exceeds the carefully limited detention that our existing statute authorizes.

detention authority because the "good cause" provision of § 1322(h) already furnishes that authority to the same extent. This contention rests upon the assumption that a Superior Court judge would readily deem the pandemic to be "good cause" for an extension of the 100-day limit not once, but more like twenty consecutive times. If a Superior Court judge were to deny the government's request for a good cause extension based on the pandemic, the government (and my colleagues in the majority) would contend that § 11-947 still legally extends the 100-day limit. And of course the government did not seek a good-cause extension here, so the only possible source of authority for the detention in this case is § 11-947. Our rule of strict construction of detention statutes would mean little if Congress could evade it by using a different statute—a "nondetention statute" *not* subject to strict construction—to expand the authority granted by the first.

While I would reverse the detention orders in this case on the ground that they lack statutory authority, I agree with Mr. Jordan and Mr. Sharps that their detention under § 11-947 also raises due process concerns. In March of 2020, the chief judge's order postulated that the Superior Court could resume regular operations and jury trials in May. The chief judge then delayed these events to August. Then again to November, then to January, and most recently to March 31, 2021. *See ante* notes 13–17. Now this court concludes that because the Superior Court's Criminal

Division has said it will set some cases[6] for trial beginning March 22, 2021, there is

light is at the end of the tunnel. *Ante* at 8. I largely agree with the majority's

summary of the Constitution's requirements under the Due Process Clause, and I

agree that the test essentially hinges on the indefinite nature of the detention. *See*

*ante* at 28. On the question whether the statutes here, when read as my colleagues

read them, have in fact effected indefinite detentions, I part ways with my

colleagues. For an ever-increasing number of people in the D.C. Jail awaiting trials,

there is only uncertainty.

Without even accounting for new variants of the COVID-19 virus that could

derail the country's vaccination campaign aimed at herd immunity,[7] we have no

---

[6] Mr. Jordan and Mr. Sharps's cases will not qualify to be set for trial, as the published plan categorically excludes the offenses with which they have been charged. Notice of Intent to Resume Criminal Division Jury Trials in Felony 2 Cases Previously Set for Trial in Which Defendant is Detained Pursuant to D.C. Code 23-1322(b) (Jan. 15, 2021), https://www.dccourts.gov/sites/default/files/Notice-of-Intent-to-Resume-Felony-2-Jury-Trials.pdf https://perma.cc/88BE-NVSX.

[7] It is not known at this time whether these variants will be resistant to the long-awaited vaccines that only a minority of D.C. residents has been able to access. Anna Gross & Clive Cookson, *Brazil Virus Variant Found to Evade Natural Immunity*, Fin. Times (Mar. 1, 2021), https://www.ft.com/content/51cf718d-e701-4292-a9dd-dd36c1b1c5ea https://perma.cc/64SE-VSPM; Carl Zimmer, *7 Virus Variants Found in U.S. Carrying the Same Mutation*, N.Y. Times (Feb. 15, 2021), https://www.nytimes.com/2021/02/14/health/coronavirus-variants-evolution.html https://perma.cc/N3BX-VGGP; William Booth & Carolyn Y. Johnson, *South Africa Suspends Oxford-AstraZeneca Vaccine Rollout After Researchers Report 'Minimal' Protection Against Coronavirus Variant*, Wash. Post (Feb. 7, 2021, 4:18 PM),

grounds for confidence in the accuracy of the Superior Court's timeline and do not ourselves, as judges, possess the scientific expertise to endorse or reject such optimism.  If past postponements are any indication, March 22 may not be the magic date this time around—the Superior Court's notice regarding intent to resume jury trials that day cautions that "[a]ny trial date as well as the number of trials to be set per week" will be contingent upon the mayor imposing "no further restrictions on governmental operations" in the District, the approval of the Department of Health, and the "ability to summon jurors and conduct trials in a manner consistent with public health and the safety of all participants and the due process rights of the defendant."[8]  As far as we know, a return to life as it was—and trials as they were— before the COVID-19 pandemic is itself a "contingent event that might never occur."[9]  *See ante* at 29.  And if it is not, the repeated proffering of dates that lack

https://www.washingtonpost.com/world/europe/astrazeneca-oxford-vaccine-south-african-variant/2021/02/07/e82127f8-6948-11eb-a66e-e27046e9e898_story.html. https://perma.cc/TQ8H-6PP8; *UN: 'Concerning News' Vaccines May Not Work Against Variants*, AP News (Feb. 8, 2021), https://apnews.com/article/un-news-vaccine-may-not-work-variants-7950427023f7883e0c2d33998aafb279.

[8]  Notice of Intent to Resume Criminal Division Jury Trials in Felony 2 Cases Previously Set for Trial in Which Defendant is Detained Pursuant to D.C. Code § 23-1322(b).

[9]  James Gorman, *Potential for New Coronaviruses May Be Greater Than Known*, N.Y. Times (Feb. 16, 2021), https://www.nytimes.com/2021/02/16/science/Covid-reemerging-viruses.html https://perma.cc/MPC2-3BS5 ("[Researchers] warned that the possibility of

any assurance of an end in sight is not the sort of definiteness due process requires. *See Foucha v. Louisiana*, 504 U.S. 71, 81–82 (1992) (noting that the *Salerno* Court found the Bail Reform Act "constitutionally permissible" because it "was strictly limited in duration"); *id.* at 83 ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." (quoting *Salerno*, 481 U.S. at 755)).

"It is during our most challenging and uncertain moments that our Nation's commitment to due process is most severely tested." *Hamdi v. Rumsfeld,* 542 U.S. 507, 532 (2004). Unquestionably the pandemic has created serious, almost unimaginable, challenges for the Superior Court and for the people who run the court. But "the pressing exigencies of crisis" cannot justify "dispens[ing] with fundamental constitutional guarantees," *id.*; *see also id.* at 529 (describing "the interest in being free from physical detention by one's own government" as "the most elemental of liberty interests"), and the people in jail awaiting trial should not bear a disproportionate share of the burden of this crisis by enduring a protracted and effectively indefinite incarceration that exceeds the limited authority of our detention statute. *See Foucha*, 504 U.S. at 80 (1992) (describing "[f]reedom from

recombination resulting in the emergence of some new dangerous coronavirus is highly underestimated.").

bodily restraint" as a right that "has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action").